# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VICKI RENEE DICKINSON,

        Defendant-Appellant.

FOR PUBLICATION
August 15, 2017
9:00 a.m.

No. 332653
Branch Circuit Court
LC No. 14-101331-FH

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

BOONSTRA, P.J.

Defendant appeals by right her convictions, following a jury trial, for delivery of a controlled substance less than 50 grams, MCL 333.7401(2)(a)(*iv*), possession of a controlled substance less than 25 grams, MCL 333.7403(2)(a)(*v*), and furnishing a controlled substance to a prisoner in a correctional facility, MCL 800.281(1). The trial court sentenced defendant to concurrent prison terms of 18 months to 240 months for the delivery conviction, 18 months to 48 months for the possession conviction, and 18 months to 60 months for the furnishing to a prisoner conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On September 22, 2014, defendant visited a prisoner, Bobby Cain, at the Lakeside Correctional Facility in Coldwater, Michigan. Before that visit, Lakeside Correctional Facility Sergeant Todd Riley was advised by another corrections officer that a contraband drop might occur that day between Cain and defendant. Riley arranged for Cain and defendant to sit in the prison visitor room directly in front of (and about five feet from) the room's observation window so that he could observe them. During defendant's visit, Riley observed defendant go to a vending machine, make a purchase, sit back down next to Cain, take a "brown paper towel,"[1] crinkle it up, and place it on the TV tray that Cain and defendant were using. Cain picked up the paper towel and cupped it in his hand. Riley observed Cain transfer what was in the paper towel from one hand to the other, and then hold that hand cupped next to his leg. Cain placed the empty crinkled paper towel back onto the TV tray. Riley went to the visiting room, walked over to Cain, took hold of Cain's hand, and removed a blue balloon that was packed tightly with a

---

[1] Defendant in her testimony referred to this object as a napkin.

-1-

substance. Cain was removed from the visiting room, and defendant calmly remained sitting where she was. Although other individuals were in the prison visiting room at the time of the incident, Riley observed no suspicious interactions between them and Cain. Defendant's visit with Cain was video-recorded by one of the prison visiting room cameras. At trial, Riley testified to these events, and the video recording was played for the jury during his testimony.

Michigan State Police (MSP) Trooper Jeremy Miller testified that he was dispatched to the prison to test the contraband for narcotics. Miller removed the contents from the balloon and disposed of the balloon in the trash. He then took defendant into custody and searched her. With her consent, he also searched her vehicle, as well as her purse inside the vehicle, with the assistance of a drug-detecting dog. The dog had previously given an alert indicating the possible detection of narcotics in defendant's car. No drugs were found in defendant's car or purse. Miller sent the substance seized from the balloon to the MSP lab for further testing; the testing revealed the substance to be 5.68 grams of heroin.

Miller testified that he prepared two police reports related to his investigation, an investigating officer report and a separate report related to the drug-detecting dog's search. Although both the prosecution and defense counsel possessed the investigating officer report, and although it reported that a dog was used in the search, neither was aware that the second police report existed. After Miller's testimony, defense counsel moved for a mistrial on the ground that defendant was prejudiced by the prosecution's failure to produce the second report in response to the defendant's discovery request. The trial court considered the evidence in the record and the fact that both parties lacked knowledge of the second police report before Miller testified to its existence. The trial court observed that defense counsel had cross-examined Miller and had obtained testimony from him that was favorable to the defense. Specifically, Miller admitted on cross-examination that this drug-detecting dog would often give a false alert in order to obtain his reward from his handler. Consequently, the trial court concluded that defendant was not prejudiced and denied defendant's motion for a mistrial.

Defendant testified at trial. She stated that she had purchased an ice cream bar for Cain from the vending machine, that it had made her hand cold, and that she used a napkin to warm her hand. She set the napkin down on the TV tray but never noticed that Cain picked it up. She also explained that she took prescription pain medication that she believed the dog had detected in her purse. She stated that she never possessed the heroin that was taken from Cain and knew nothing about it.

After the parties gave their closing arguments and the jurors were instructed, defense counsel renewed defendant's motion for a mistrial on the same discovery violation ground. The trial court again denied the motion. The jurors returned their verdict finding defendant guilty as described.

At defendant's sentencing, the prosecution objected to the scoring for Prior Record Variable (PRV) 7, which required assessment of points for subsequent or concurrent felony convictions, and Offense Variable (OV) 14, which required assessment of points if the offender was a leader in a multiple offender situation. The prosecution argued that defendant should have been assessed 20 points (instead of zero) for PRV 7 because defendant had been convicted of two or more concurrent felonies. Defense counsel argued that defendant's convictions were for conduct in a single event and that PRV 7 applied only to separate events. The prosecution next

argued that defendant was the leader in a multiple offender situation and should have been assessed ten points (instead of zero) for OV 14. Defense counsel argued that OV 14 required multiple participants, which this case did not have. Defense counsel then asked for an opportunity to brief the PRV 7 issue. Consequently, the trial court adjourned the sentencing hearing. When the trial court resumed the hearing, defense counsel argued that the trial court could not assess any points under PRV 7 because the two controlled substance offenses were based on the same facts and because considering them as concurrent convictions for purposes of scoring PRV 7 raised double jeopardy concerns. The prosecution argued that double jeopardy did not apply because the two controlled substance offenses for which defendant was found guilty required proof of separate and distinct elements. The trial court concluded that double jeopardy did not apply because each of the offenses that defendant committed required proof of separate and distinct elements. The trial court scored PRV 7 at 20 points.

The trial court next addressed the prosecution's objection to scoring OV 14 at zero points. The prosecution argued that defendant's conduct in sourcing, acquiring, and delivering the heroin to Cain was indicative of her leadership role for which she should have been assessed points. The defense countered that Cain was the leader and that defendant was an unsuspecting dupe. The trial court was persuaded by the prosecution's argument and assessed defendant 10 points for OV 14.

The trial court sentenced defendant as described. This appeal followed.

While her appeal was pending, defendant filed three postconviction motions with the trial court, two of which are relevant to defendant's appeal. Defendant moved for the entry of a judgment of acquittal and also moved for resentencing. In her motion for acquittal, defendant argued that she could not be convicted and punished for both delivery and possession of heroin because that would violate the constitutional prohibition against double jeopardy. In her motion for resentencing, defendant argued that OV 19 was incorrectly scored at 25 points because defendant's conduct did not threaten the security of the penal institution. Defendant contended that OV 19 should be scored at zero points, which would result in a lower minimum sentence range of zero to nine months.

The trial court issued a written opinion denying defendant's motion for acquittal. The trial court relied upon *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007), in which the Michigan Supreme Court adopted the double jeopardy test articulated in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), under which a trial court must examine whether each offense required proof of an element that the other did not. The trial court applied the *Blockburger* test and concluded that possession of a controlled substance and delivery of a controlled substance were separate offenses. The trial court held that defendant could be convicted of both offenses and punished separately for each without violating defendant's rights against double jeopardy. The trial court also denied defendant's motion for resentencing because it found that defendant's smuggling of a controlled substance into the prison presented a serious threat to the security of a penal institution, and therefore that OV 19 was correctly scored at 25 points.

## II. DOUBLE JEOPARDY

On appeal, defendant argues that the trial court violated her constitutional right to be free from double jeopardy because she was separately convicted and punished for both possession and delivery of heroin. We disagree.

We review de novo a claim that a conviction violates a defendant's protection from double jeopardy. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). We also review de novo questions of statutory interpretation. *People v Collings*, 298 Mich App 458, 461; 828 NW2d 392 (2012).

The United States Constitution and the Michigan Constitution both prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *People v Ford*, 262 Mich App 443, 447; 687 NW2d 119 (2004). The Double Jeopardy Clauses "afford three related protections: (1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense." *Ford*, 262 Mich App at 447. The "purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant from having more punishment than the Legislature intended." *Id*. at 447-448. The Double Jeopardy Clauses, however, do not restrict or diminish the Legislature's ability to define criminal offenses and establish punishments. *Id*. at 448.

In determining "whether the Legislature intended to impose multiple punishments for violation of more than one statute during the same transaction or incident," trial courts must apply the "same elements" test articulated in *Blockburger*. *Ford*, 262 Mich App at 448. Under the *Blockburger* test, the trial court must inquire whether each offense contains an element not contained in the other offense. If the two offenses do not each contain at least one element that the other does not, double jeopardy bars additional punishment. Where "two distinct statutes cover the same conduct but each requires proof of an element the other does not," a presumption exists that the Legislature intended multiple punishments unless the Legislature expressed a contrary intent. *Ford*, 262 Mich App at 448-449.

In *People v Ream*, 481 Mich 223, 238; 750 NW2d 536 (2008), the Michigan Supreme Court clarified that the "*Blockburger* test is a tool to be used to ascertain legislative intent." "Because the statutory elements, not the particular facts of the case, are indicative of legislative intent, the focus must be on these statutory elements." *Id*.

More recently, the Court has stated that

[W]hen considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in *Ream* to discern legislative intent. [*People v Miller*, 498 Mich 13, 19; 869 NW2d 204 (2015) (citations omitted).]

Defendant argues that her rights were violated because she was punished twice for the same conduct, inasmuch as her convictions for delivering heroin and possession of heroin arose

-4-

out of a single event. Defendant's argument lacks merit. MCL 333.7401(2)(a)(*iv*) defines the crime of delivering a controlled substance less than 50 grams in relevant part as follows:

> (1) Except as authorized by this article, a person shall not . . . deliver a controlled substance . . . .

> (2) A person who violates this section as to:

> (a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(*iv*) and:

> \* \* \*

> (iv) Which is in an amount less than 50 grams, of any mixture containing that substance is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

The elements of delivery of less than 50 grams of heroin are: (1) defendant's delivery, (2) of less than 50 grams, (3) of heroin or a mixture containing heroin, (4) with knowledge that she was delivering heroin. *Collings*, 298 Mich App at 462. MCL 333.7105(1) defines delivery as follows: " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." "[T]ransfer is the element which distinguishes delivery from possession." *People v Shultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001).

MCL 333.7403 defines the crime of possession of a controlled substance and provides in relevant part:

> (1) A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

> (2) A person who violates this section as to:

> (a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(*iv*), and:

> \* \* \*

> (v) That is in an amount less than 25 grams of any mixture containing that substance is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $25,000.00, or both.

Thus, the elements of possession of less than 25 grams of heroin are: (1) the defendant knowingly or intentionally possessed a controlled substance; (2) the substance was heroin; and (3) the substance was in a mixture that weighed less than 25 grams. MCL 333.7403(2)(a)(*v*);

*People v Hartuniewicz*, 294 Mich App 237, 245-246; 816 NW2d 442 (2011). As explained in *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), possession is a nuanced concept:

> A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance. [Citations omitted.]

In identifying the statutory elements for each of the two offenses for which defendant was sentenced, the Legislature did not expressly state its intent regarding the permissibility of multiple punishments. Therefore, we apply the abstract legal elements test articulated in *Ream* to discern the legislative intent. *Miller*, 498 Mich at 19. Analysis under the *Blockburger* test of the elements of the two offenses for which defendant was punished establishes that the two offenses are separate and distinct. The delivery offense required proof of the separate element of delivery of the heroin that the possession offense did not require. The possession offense required proof of the element of possession of the heroin that the delivery offense did not require.

In the context of considering whether possession of heroin is a lesser-included offense of delivery of heroin (i.e., whether the offense of possession of heroin contains elements that are not subsumed in the elements of the offense of delivery of heroin), this Court has noted that the distinction between possession and delivery has been made "consistently" in our caselaw. *People v Binder* (*On Remand*), 215 Mich App 30, 35; 544 NW2d 714, vacated in part on other grounds 453 Mich 915; 554 NW2d 906 (1996). The *Binder* panel addressed defendant's argument, which is that it is impossible to deliver heroin without possessing it, as follows:

> One might argue that it is impossible for a party to manufacture, deliver or intend to manufacture or deliver a controlled substance without at least constructive possession of it. However, in our estimation, such an analysis unnecessarily adds the element of constructive possession to the crime. Requiring proof of constructive possession inappropriately creates a doorway through which drug traffickers, particularly those high in the distribution chain, can escape.

> Earlier judicial decisions finding the crimes of possession and delivery to be cognate offenses must have been made in partial recognition of the problems any other interpretation would create. We adopt the reasoning of our predecessors and reiterate that possession of a controlled substance is not a lesser, necessarily included offense of delivery. [*Id.* at 35-36.]

The reasoning of *Binder* applies in this context, is binding on this Court,[2] and comports with our Supreme Court's directive to examine the abstract legal elements of the two offenses, rather than

---

[2] See MCR 7.215(J)(1).

-6-

the facts of the case, in determining whether the protection against double jeopardy has been violated. *Ream*, 481 Mich at 238. While this defendant may indeed have completed the crime of possession of heroin before delivering it, the prosecution was not required to prove possession to convict her of delivery, and vice versa. Consequently, defendant's convictions for each offense and the trial court's sentencing of defendant separately for each offense did not violate defendant's rights against double jeopardy.

## III. PRESERVATION OF EVIDENCE

Defendant further argues that the MSP's failure to preserve the balloon in which the heroin was found deprived defendant of due process, because she was prevented from performing DNA testing on the balloon. We disagree. Defendant did not preserve this issue by raising it before the trial court; we therefore review it for plain error affecting substantial rights. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). A prejudicial error is one that affected the outcome of the proceedings below. *Carines*, 460 Mich at 763-764.

To warrant reversal on a claimed due process violation involving the failure to preserve evidence, a "defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). When the evidence is only "potentially useful," a failure to preserve the evidence does not amount to a due process violation unless a defendant establishes bad faith. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). A "[d]efendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). A prosecutor is not required to "seek and find exculpatory evidence" or assist in building the defendant's case, and it is not required to "negate every theory consistent with defendant's innocence." *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). Further, unless the defendant can show the suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to perform DNA testing to satisfy due process. *Id*.

Defendant argues that the balloon that held the heroin should have been preserved, because DNA testing may have provided a basis for the jury to doubt that she possessed and delivered the heroin. In her brief on appeal, however, defendant concedes that the balloon was only "potentially exculpatory." Defendant has not established that the balloon was, in fact, exculpatory evidence that would have exonerated her. Defendant does not argue that the police destroyed the balloon in bad faith. Nor do we find any bad faith from our review of the record. The trial record established that Miller took the contraband from Riley, removed the contents from the balloon, field-tested the substance that had been inside it, and disposed of the balloon according to standard police protocol for processing such evidence.

Moreover, the overwhelming evidence at trial established that defendant possessed and passed the heroin to Cain. Consequently, even if the balloon had been DNA-tested and someone else's DNA (rather than defendant's) was found on it, the test results would have made no difference to the outcome of the case. Therefore, we conclude that preserving and testing the balloon would not have changed the outcome of defendant's trial or exonerated her. Accordingly, defendant's claim that she was deprived of due process because the balloon was not preserved lacks merit. *Carines*, 460 Mich at 763-764.

## IV. DENIAL OF MOTION FOR MISTRIAL

Defendant also argues that the trial court abused its discretion by denying her motion for a mistrial based on the prosecution's failure to produce the second police report in response to her discovery request. We disagree.

We review a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion. *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). To obtain relief for a discovery violation, the defendant must establish that the violation prejudiced her. *Id*. at 525-526.

Further, we review for an abuse of discretion the trial court's denial of a motion for a mistrial. *People v Bauder*, 269 Mich App 174, 194; 712 NW2d 506 (2005). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Lugo*, 214 Mich App 699, 704; 542 NW2d 921 (1995). "For a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *People v Odom*, 276 Mich App 407, 421-422; 740 NW2d 557 (2007). Further, the moving party must establish that the "error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

Defendant contends that the prosecution's discovery violation deprived her of due process and she was prejudiced because, if she had timely received the second police report, she might have consulted an expert to determine if the dog could mistake the presence of a prescribed drug for heroin. She contends that this may have lent additional support to her defense theory that she never possessed any heroin. Defendant's conjecture, however, does not establish that she was prejudiced and entitled to a mistrial.

" 'There is no general constitutional right to discovery in a criminal case . . . .' " *People v Jackson*, 292 Mich App 583, 590; 808 NW2d 541 (2011), quoting *Weatherford v Bursey*, 429 US 545, 559; 97 S Ct 837; 51 L Ed 2d 30 (1977). The Michigan Court Rules govern the scope of discovery in a criminal case. MCR 6.201; *People v Phillips*, 468 Mich 583, 588-589; 663 NW2d 463 (2003). MCR 6.201(B)(1) provides that the prosecution, upon request, must provide the defendant any exculpatory information or evidence. MCR 6.201(B)(2) provides that the prosecution, upon request, must provide the defendant with any police report concerning the case except for portions that concern an ongoing investigation. The prosecution bears responsibility for evidence within its control, even evidence unknown to it, and even where the nondisclosure was inadvertent and not intentionally withheld. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014).

In this case, defense counsel requested the disclosure of police reports under MCR 6.201(B)(2), and was not provided with the second police report. Even though the prosecution lacked knowledge of the existence of the second report until it was first revealed at trial, the prosecution's failure to discover and disclose the report to the defense likely constituted a discovery violation. *Chenault*, 495 Mich at 150. Assuming it to be so, trial courts have the authority under MCR 6.201(J) to fashion an appropriate remedy for a discovery violation. To be

entitled to relief under MCR 6.201(J), a defendant must demonstrate that she was prejudiced by the discovery violation. *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997).

Here, defendant did not seek a continuance or other remedy from the trial court for the prosecution's discovery violation as permitted under MCR 6.201(J). Instead, defendant moved for a mistrial. We conclude from our review of the record that the trial court correctly analyzed the discovery issue in light of the entire record. The record establishes that, despite not having the second police report in advance of trial, defense counsel effectively cross-examined Miller regarding the dog search and obtained testimony favorable to the defense. Miller admitted that no drugs were found in either defendant's car or purse, and he admitted that the drug-detecting dog commonly gave false alerts. The record reflects that defense counsel used these admissions in closing argument to support the defense theory that defendant never possessed the heroin and to cast doubt on the prosecution's case.

Contrary to defendant's argument, our review of the record leads us to conclude that even if defendant had obtained the second police report in advance of trial and prepared her defense in the manner she contends she may have done, it would have made no difference to the outcome of her trial. Her delivery of the heroin to Cain was captured on video. The jurors saw the video and heard Riley's testimony that he had personally observed defendant commit the charged offenses. Accordingly, we conclude that any discovery violation on the part of the prosecution did not prejudice defendant. The trial court did not abuse its discretion in denying defendant's motion for a mistrial. *Gonzales*, 193 Mich App at 266; *Lugo*, 214 Mich App at 704.

## V. SENTENCING

Finally, defendant argues that she is entitled to resentencing because the trial court incorrectly scored OV 14 and OV 19, resulting in an incorrect minimum sentencing range under the statutory sentencing guidelines. We disagree.

We review for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, and such facts must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo the trial court's interpretation and application of the statutory sentencing guidelines. *People v Jackson*, 487 Mich 783, 789; 790 NW2d 340 (2010). We will hold the trial court's factual determinations clearly erroneous only if we are left with a definite and firm conviction that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).

When calculating the sentencing guidelines scores, a trial court may consider all of the evidence in the trial court record. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). "A sentencing court has discretion in determining the number of points to be scored,

provided that evidence of record adequately supports a particular score." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).[3]

Under MCL 777.22, OV 14 must be scored for all felony offenses. MCL 777.44 describes when and how OV 14 is to be scored:

> (1) Offense variable 14 is the offender's role. Score offense variable 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The offender was a leader in a multiple offender situation …………………………………………………………………………… 10 points
>
> (b) The offender was not a leader in a multiple offender situation ………………………………………………………………………….. 0 points
>
> (2) All of the following apply to scoring offense variable 14:
>
> (a) The entire criminal transaction should be considered when scoring this variable.
>
> (b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

In *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014), we noted that the Legislature did not define what constitutes a "leader" for the purposes of OV 14. We therefore reviewed dictionary definitions and noted that "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *Id*. We concluded that, for purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions, "or was otherwise a primary causal or coordinating agent." *Id*. In *People v Jones*, 299 Mich App 284, 286-288; 829 NW2d 350 (2013), we analyzed, for OV 14 scoring purposes, the undefined terms "multiple offender situation" in relation to the undefined term "leader." We held that "the plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *Id*. at 287. We applied the plain meaning of those terms to the facts of the case and determined that the trial court's assessment of 10 points for the defendant's OV 14 score was correct and supported by several facts in the trial record. *Id*. at 287-288. Notably, we concluded that the defendant was involved in a "multiple offender situation" even though he was accompanied by only one other person and even though the other person was not charged in connection with the crime for which the defendant was convicted. *Id*.

---

[3] The Michigan Supreme Court recently clarified that sentencing courts must determine the applicable range of a sentence under the sentencing guidelines and must take such calculations into account when imposing a sentence, but that the guidelines are advisory only and not mandatory. *People v Lockridge*, 498 Mich 358, 398; 870 NW2d 502 (2015).

In this case, in scoring OV 14, the trial court considered the "entire criminal transaction" as required under MCL 777.44(2)(a). Our review of the record leads us to conclude that the trial court's findings that defendant procured the heroin, possessed it for a period of time, transported it to the prison, and delivered it to Cain, were supported by a preponderance of the evidence and not clearly erroneous. Nor did the trial court misinterpret or misapply the sentencing guidelines in determining that defendant acted as a leader. Cain obviously could not leave the prison to procure the heroin himself. It is reasonable to infer, as the trial court did in this case, that defendant exercised independent leadership to procure the heroin from someone else outside the prison, transported it independently to the prison, and smuggled it inside before transferring it to Cain. Trial courts may draw inferences regarding a defendant's behavior from objective evidence when considering sentencing. *People v Petri*, 279 Mich App 407, 422; 760 NW2d 882 (2008). Consequently, we hold that the trial court correctly scored OV 14 at 10 points for defendant's role in the criminal transaction.

Regarding OV 19, MCL 777.22 requires that OV 19 must be scored for all felony offenses. Under MCL 777.49, OV 19 is to be scored at 25 points when a defendant's criminal conduct threatened the security of a penal institution. Bringing controlled substances like heroin into a prison and delivering them to a prisoner in violation of MCL 800.281(1) inherently puts the security of a penal institution at risk. Our Legislature has specifically criminalized such conduct because of the seriousness of the problem of drugs in our State's penal institutions and the way illicit drug use interferes with the administration of justice in those institutions. Defendant's delivery of an unquestionably dangerous drug like heroin into the confines of the prison threatened the safety and security of both the guards and the prisoners, and, therefore, threatened the security of a penal institution.

Defendant does not dispute the trial court's conclusion that smuggling drugs into a penal institution creates serious problems for inmates and prison guards, but rather argues that OV 19 applies only to offenders who smuggle weapons into a prison. That argument, however, is unavailing because MCL 777.49 by its language does not limit the scoring of 25 points for OV 19 only to offenders who smuggled weapons or other mechanical destructive devices into a prison. Our review of the trial court's application of MCL 777.49 to the facts of this case and the reasonable inferences drawn from those facts establishes that the trial court's assessment of 25 points for defendant's OV 19 score was warranted. Accordingly, defendant is not entitled to resentencing.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle