*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRAVIS SANTELLE BURTON,

Defendant-Appellant.

UNPUBLISHED
February 16, 2023

No. 358681
Berrien Circuit Court
LC No. 2021-000174-FH

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant, Travis Santelle Burton, appeals as of right his jury trial convictions of delivering or manufacturing cocaine less than 50 grams, MCL 333.7401(2)(a)(*iv*); and possessing cocaine less than 25 grams, MCL 333.7403(2)(a)(*v*). The trial court sentenced him, as a fourth-offense habitual offender, MCL 769.12, to 3 to 40 years' imprisonment for delivering or manufacturing cocaine less than 50 grams and to two to eight years' imprisonment for possessing cocaine less than 25 grams. We affirm.

## I. FACTUAL BACKGROUND

In January 2021, the Michigan State Police Southwest Enforcement Team (SWET), a multijurisdictional team tasked with investigating narcotics, opened an investigation regarding defendant. On January 6, 2021, Detective Jessica Frucci arranged and completed a drug transaction on the basis of an assigned anonymous tip. The anonymous tip claimed that a phone number ending in 2691 was associated with a seller named "Travis" who sold crack cocaine. She cold called, a tactic that involved blindly dialing a number in an attempt to order drugs from whomever responded, and ordered $80 worth of crack cocaine.

The seller instructed Detective Frucci to meet at the intersection of Pearl and Emery streets where she saw an individual standing. This individual approached her, handed her three little corner baggies, later determined to contain cocaine in the form of cocaine base, and accepted the $80 buy money that she held out. She did not know whether this individual was "Travis" or the individual with whom she communicated. She later identified this individual as Shannon Barber. After the drug transaction concluded, she engaged in a text conversation with the 2691 number in

-1-

which a person identified as "Red Hard" said, "[O]kay, let me see your hole—that hole[.]" Even though the text messages displayed the name "Red Hard" and not defendant's, she believed that she was communicating with defendant. She did not mention this text conversation in her report or disclose this text conversation to the prosecution.

Meanwhile, on the same day, SWET began surveilling defendant. After Detective Frucci arranged the drug transaction, Lieutenant Shawn Yech drove to defendant's apartment to watch him because SWET believed that defendant would be the individual selling Detective Frucci the cocaine or was the individual with whom Detective Frucci corresponded. As the time for the drug transaction arrived, defendant left his apartment and entered a Chevy Malibu. Lieutenant Yech did not follow defendant or observe the drug transaction, however. Approximately one hour after the transaction finished, Lieutenant Yech drove back to defendant's apartment and saw the Malibu parked outside. Lieutenant Yech recorded the Malibu's license plate number.

On January 7, 2021, the next day, Detective Frucci called to arrange another drug transaction for crack cocaine. She again met with Barber near Pearl and Emery. Before the transaction occurred, the two engaged in a brief conversation. Detective Frucci asked for a name, and Barber inquired as to why. Detective Frucci explained that "because you asked to see [her] my hole" and "who asks to see someone's hole [but] who doesn't give a name?" Barber denied that he asked that, but he shared that his name was "Sole." Detective Frucci then gave Barber $80 in buy money and accepted the equivalent worth of what later tested to be cocaine.

Before the second transaction played out, Lieutenant Yech and Detective Jeremiah Gauthier were surveilling from a police vehicle. Detective Gauthier observed the Malibu stop in front of an apartment north of Pearl and Emery to pick up Barber. After the Malibu dropped Barber at Pearl and Emery, the Malibu left the area. About 5 to 10 seconds into the drug transaction, the Malibu returned to pick up Barber. When the Malibu passed them, Lieutenant Yech and Detective Gauthier identified defendant as the driver. A recording from the police vehicle showed the Malibu's license plate to be DUS 3379.

After becoming familiar with defendant's voice throughout the case proceedings, Detective Frucci opined that the individual she talked with to arrange both drug transactions was defendant. At trial, Lieutenant Yech explained that drug dealers commonly use a third party to deliver their drugs in order to distance themselves from the hand-to-hand exchange. On the basis of Detective Frucci's drug transactions, Lieutenant Yech opined that defendant's actions were consistent with this practice.

Although SWET wanted to arrange additional drug transactions, Detective Frucci was unable to make contact because the phone ending in 2691 was turned off. Lieutenant Yech learned that defendant had been arrested on January 9, 2021, for an unrelated incident and his phone was stored in a property locker at the county facility; he informed Detective Frucci. On January 12, 2021, Detective Frucci visited the county facility and retrieved defendant's secured phone. a phone included in defendant's personal belongings bag. The phone was turned off, so she powered on the phone, called the 2691 number using her phone, and the retrieved phone rang in response. She then turned off the retrieved phone and placed it in a secured evidence locker. Later in the day, Detective Frucci prepared the paperwork for a search warrant for defendant's apartment. The attached five-page affidavit for the search warrant detailed three key pieces of evidence: an

analysis about the two drug transactions, dissection of defendant's movements during the two drug transactions, and confirmation that defendant's phone possessed the number associated with the two drug transactions.

On January 13, 2021, SWET executed the search warrant for defendant's apartment. A scale with residue, later determined to be marijuana and cocaine, was found in the kitchen. A digital scale with residue, later determined to be marijuana, cocaine, and methamphetamine, was found inside a vase in the living room. In the master bedroom, a cell phone packaging box was found that indicated that the phone purchased was issued the phone number ending in 2691.

Andre Gulledge owned the apartment but leased it to defendant starting in December 2019. As part of his application, defendant provided the phone number ending in 2691 for his tenancy. Gulledge used the number throughout defendant's tenancy to contact defendant. Gulledge provided only one key for the lease because defendant was the only person on the lease. Throughout defendant's tenancy, the only vehicle that Gulledge observed defendant driving, entering, and leaving was a grey Chevy Malibu. The Malibu was registered to Ishanee Velox and Priest,[1] who were defendant's sister and defendant's sister's boyfriend, respectively. In January 2021, Velox loaned the Malibu out, so other individuals, aside from defendant, had access to Malibu. Velox parked the Malibu in front of defendant's apartment and stored a set of keys at defendant's apartment.

On June 23, 2021, the trial court heard defendant's motion to suppress the evidence found in defendant's apartment based on the search warrant. Defendant argued that, without a proper search warrant, Detective Frucci removed the phone from a property bag holding defendant's belongings, charged the phone, powered on the phone, and called the number from another phone, which caused the phone to ring. The affidavit for the search warrant for defendant's apartment states that Detective Frucci seized the phone at the jail and "confirmed it was the phone [that] was used to arrange undercover narcotic buys." At defendant's apartment, law enforcement found evidence of drug use and possible drug trafficking and delivery. Notably, the trial court ruled that even without the call confirming the phone number, there was sufficient information, specifically the details provided by Detective Frucci and Gulledge, to sustain and support the search warrant. Consequently, the trial court denied defendant's motion to suppress.

During a recess on the first day of trial, the trial court allowed defendant to review overnight the text conversations between Detective Frucci and "Red Hard" and made Detective Frucci available the next day for further cross-examination because, despite defendant's motion to compel discovery, the prosecution did not disclose all of these text conversations.[2] Before the start of the second day of trial, defendant moved for a mistrial, alleging that the prosecution violated his right to due process under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Although he received a copy of the text conversations at the end of the first day of trial, he argued that he was fundamentally prejudiced because he was unable to prepare cross-examination or

---

[1] The first name of Priest was not provided.

[2] Detective Frucci testified that no one asked her about text messages at the preliminary hearing and she only included information in her report that pertained to the drug transactions.

discovery, i.e., subpoena complete phone records from the carrier. The trial court denied his motion because defendant was provided adequate time to review eight lines of text and prepare cross-examination, and the court was unsure what other discovery would need to be done around the text conversations. The trial court offered defendant more time to prepare for cross-examination by offering to bring Detective Frucci back in the afternoon or the next day. Upon defendant's request, the trial court ordered that Detective Frucci be brought back for cross-examination the next day.

Defendant now appeals.

## II. MOTION TO SUPPRESS

### A. PRESERVATION OF ISSUE

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Before the start of trial, defendant moved to suppress evidence in violation of his Fourth Amendment right. This issue is preserved for appeal.

### B. STANDARD OF REVIEW

We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation. We review for clear error any findings of fact made during the suppression hearing. A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. We review de novo the issue whether the Fourth Amendment was violated and the issue whether an exclusionary rule applies. [*People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (quotation marks and citation omitted).]

### C. DISCUSSION

Defendant argues that the seizure of a phone from defendant's belongings in a property locker, as well as calling the number and causing the phone to ring, violated defendant's Fourth Amendment protection against unreasonable searches and seizures. While it is an interesting question whether a search warrant is required to turn on a cell phone, it is not one that we need address in this case. The fatal flaw in defendant's argument on appeal is that it does not address the primary basis for the trial court's ruling.

In its ruling, the trial court specifically stated that, even ignoring any reference to calling defendant's cell phone and the phone ringing, "there was sufficient information to sustain and support the search warrant in that affidavit." The court then emphasized that the detective spoke with defendant's landlord, who confirmed, among other things, defendant's cell phone number being the same number that Detective Frucci called to arrange the drug purchases during the investigation. The trial court then said that "the Court may not even get to the issue of the cell phone itself." While the trial court did briefly discuss the issue, it nevertheless returned to its basic conclusion that "the search warrant and affidavit stand without any information of the ringing of

the cell phone . . . ." It dismissed the ringing of the phone as extraneous information , stating that, "in this case I do think that the search warrant is valid on its face if you just remove that information, so the fact that they have extraneous information there does not invalidate the information that supports the affidavit, and there's plenty of probable cause in there from my reading of the reasons I just indicated."[3] The United States Supreme Court has recognized that a search warrant, even if the affidavit contains tainted information, is valid "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause . . . ." *United States v Karo*, 468 US 705, 719; 104 S Ct 3296; 82 L Ed 2d 530 (1984).

Defendant fails to argue that the trial court erred in concluding that the search warrant was supported by probable cause without the information about the ringing of the cell phone. Accordingly, even if we were to agree with defendant that the turning on of his cell phone constituted an invalid search under the Fourth Amendment, we would still be left with the trial court's unchallenged conclusion that the search warrant was nevertheless valid. Therefore, we decline to address the issue whether turning on a cell phone in police custody constitutes a search and affirm the trial court's conclusion that the search warrant was valid.

## III.  MOTION FOR A MISTRIAL

### A.  PRESERVATION OF ISSUE

To preserve an allegation of a *Brady* violation, a defendant must move the trial court for a new trial or for relief from judgment. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). Defendant did not move the trial court for a new trial or for relief from judgment. This issue is unpreserved for appeal.

### B.  STANDARD OF REVIEW

In general, "[t]his Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted). Additionally, this Court reviews a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). Because defendant did not preserve this issue, this Court's review is for plain error affecting substantial rights. *Burger*, 331 Mich App at 516. "To establish plain error, the defendant must establish that (1) an error occurred, (2) the error was 'plain'—i.e., clear or obvious, and (3) the error affected substantial rights, i.e., the outcome of the lower court proceedings was affected." *Id.* (quotation marks and citation omitted). A "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness,

---

[3] Indeed, the trial court's June 23, 2021 Order denying defendant's motion to suppress evidence states that "the search warrant for defendant's residence, without consideration of the information that Deputy Frucci located Defendant's cell phone at the jail, turned it on, and called it, set forth sufficient probable cause to sustain issuance of the search warrant in this matter."

-5-

integrity, or public reputation of judicial proceedings." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

## C.  DISCUSSION

Defendant argues that his convictions must be vacated and that he is entitled to a new trial because the trial court erred by denying his motion for a mistrial after the prosecution suppressed exculpatory evidence in violation of *Brady*.  We disagree.

In *Brady*, 373 US at 87, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  In order to establish a *Brady* violation, defendant must establish that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014).  "The government is held responsible for evidence within its control, even evidence unknown to the prosecution." *Id.*  A piece of "[e]vidence is favorable to the defense when it is either exculpatory or impeaching." *Id.*

> To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  This standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . ."  The question is whether, in the absence of the suppressed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [*Id.* at 150-151 (citations omitted; ellipsis in original).]

Defendant argues that the prosecution withheld the existence of the text conversations between Detective Frucci and "Red Hard" and that if these text conversations had been produced sooner, he could have used them to show that other individuals, aside from himself, were using the phone by subpoenaing the phone's complete records.  As the evidence showed and as he acknowledges on appeal, however, defendant was aware and in possession of the phone and, by extension, the data on the phone.  Even if he were unaware of these specific text messages, his use of the phone placed him on notice that one of the other individuals whom he alleges may have used phone was "Red Hard," the person communicating with Detective Frucci.  Moreover, defendant fails to persuasively argue how the conversations are favorable to him or that it is probable the result would have been different if they were revealed earlier. *Chenault*, *supra* at 150-151. Therefore, defendant cannot rely on these text conversations to establish a *Brady* claim, and the trial court did not abuse its discretion by denying defendant's motion for a mistrial because there was no *Brady* violation.

## IV.  CONCLUSION

We conclude that the trial court did not err when it denied defendant's motion to suppress evidence on Fourth Amendment grounds and denied defendant's motion for a mistrial on *Brady* grounds.

We affirm.


/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney