*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ERIC LAMONT KING-PRICE, JR.,

      Defendant-Appellant.

UNPUBLISHED
June 17, 2026
1:42 PM

No. 375745
Charlevoix Circuit Court
LC No. 24-057514-FH

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

BAZZI, P.J. (*dissenting*).

I respectfully dissent from the majority's decision to affirm the sentences of defendant, Eric Lamont King-Price, Jr. Because I conclude that the record is insufficient to support the trial court's determination that, under MCL 777.44(1)(a), King-Price "was a leader in a multiple offender situation," for the purposes of scoring Offense Variable (OV) 14, I would vacate King-Price's sentences and remand for resentencing.

MCL 777.44 addresses the role of the offender in the commission of a crime. It provides that a sentencing court must assess 10 points for OV 14 if "[t]he offender was a leader in a multiple offender situation," MCL 777.44(1)(a), and zero points for OV 14 if "[t]he offender was not a leader in a multiple offender situation," MCL 777.44(1)(b). Notably, "[t]he entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a).

Because MCL 777.44 does not define the term "multiple offender situation," this Court has relied on dictionary definitions to ascertain the plain meaning of the statute, holding that "the plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013). This Court has also relied on dictionary definitions to ascertain the meaning of the term "leader," stating, "[A] 'leader' is defined in relevant part as 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group.' To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014), quoting *Random House Webster's College Dictionary* (2001).

Applying the foregoing principles to the instant case, I conclude that the factual record was inadequate to support the trial court's assessment of 10 points for OV 14. In determining that King-Price was a leader in a multiple-offender situation, the trial court advanced two "independent theories." First, that King-Price was a leader with respect to the unknown seller of the credit-card information; and second, that King-Price was a leader with respect to his significant other.

As for the unknown seller, the record reflects that King-Price obtained the stolen credit-card information by paying an unknown individual. King-Price reported that a person he did not know reached out to him on Facebook and offered him access to credit-card information that he could use to pay for goods. King-Price exchanged telephone numbers with the unknown seller, and they communicated only through text messages. He paid the seller $600 for information associated with six different credit cards. Upon his arrest, King-Price confessed he was aware that the credit-card information he used to fund his family's vacation did not belong to him. He also expressed feeling "ripped off" by the transaction because he paid the unknown seller for money that he was ultimately unable to use. The trial court found that King-Price's claim "that he was duped over the Internet . . . [did] not appear to be credible based on the facts and circumstances of the case." It further found that the unknown seller was an offender because he illegally obtained the credit-card information that he provided to King-Price, and King-Price was a leader because he "was the one who carried out this theft" and "proceeded and conducted the $5,000 of theft from the . . . victims in this case."

Based on these facts, it was reasonable for the trial court to infer that the unknown seller was an offender because he violated the law by providing stolen credit-card information to King-Price. See *Jones*, 299 Mich App at 287 (defining multiple-offender situation as "a situation consisting of more than one person violating the law while part of a group"). However, considering the entirety of the criminal transaction, the record is insufficient to support the trial court's finding that King-Price was a leader for the purposes of scoring OV 14. Even accepting the trial court's credibility determination that King-Price was not "duped" into any illegal scheme by the unknown seller, at most, the record reveals an arms-length transaction between strangers. There is no evidence from which to infer that King-Price guided, directed, or conducted the unknown seller's behavior in any aspect of the offense.

While the majority concludes that the evidence established King-Price was the primary causal agent by directing how the stolen credit cards were charged, it does not address the other considerations that tend to indicate King-Price was not a leader. Whether a defendant acted as a primary causal agent in an offense is one relevant consideration, but not the only one. Sentencing courts may also consider whether the "defendant acted first, gave any directions or orders to [another offender], displayed any greater amount of initiative . . . , played a precipitating role in [another offender's] participation in the criminal transaction, or was otherwise a primary causal or coordinating agent." *Rhodes*, 305 Mich App at 90. Here, the evidence indicates that the unknown seller reached out to King-Price first and precipitated the criminal transaction by offering a means through which King-Price could purchase goods with stolen credit-card information. Beyond the purchase of the information, there is no evidence of any further coordination between the individuals. While King-Price may have directed how the credit-card information was used, he did not direct *the other offender* in the commission of the offense. In other words, it appears that King-Price was merely a beneficiary of the unlawful offense initiated by the unknown seller. If there was a leader in this arms-length transaction, based on an assessment of each of the relevant

considerations, the record does not support the trial court's finding that it was King-Price. See *id*. at 88 (noting that where two offenders are involved, "only one individual may be considered a leader in the instant criminal transaction").

As for the involvement of King-Price's significant other, the record reveals that King-Price and his significant other maintained an on-and-off relationship for nearly 10 years and had three children together. King-Price was unemployed for several years before the commission of the offense, over $8,000 in arrears for child support, and subject to a warrant for his nonpayment of child support. Using the illegally obtained credit-card information, King-Price booked a multi-night vacation for himself, his significant other, and his children. During the course of this vacation, King-Price made over $5,000 in purchases. He was observed buying items in a retail store, where he initially had trouble with his credit card declining. He subsequently returned to the store with his children to purchase clothing items, which he charged under his name to the room where he was staying with his family.

From this record, the trial court found that King-Price was a leader with respect to his significant other, who was also an offender. It reasoned:

> I'm going to find by circumstantial evidence that she was aware that [King-Price] was $9,000 in arrears on child support, approximately or [$]8,000 plus, and therefore there had to be some illegal activity going on that she was directly benefitting from by being present with the children at the resort where the 5,000 plus dollars was spent. So . . . the Court does find that she could have had some liability here.

Upon reconsideration of King-Price's OV score, the trial court again found "strong circumstantial evidence that [King-Price's] girlfriend was playing an active role in this theft" because she "enjoyed having $5,000 of the victim's money being spent on her" and "living the life of luxury with, clearly, somebody else's money" while King-Price was substantially behind on his child-support payments.

Again, I would conclude that the record is insufficient to support the trial court's determination. I question whether King-Price's significant other could properly be considered an "offender" for the purposes of scoring OV 14, given that the only evidence indicating she "violat[ed] the law while part of a group" is her presence on a vacation that King-Price paid for while he was unemployed and in arrears on child support. *Jones*, 299 Mich App at 287. While a trial court is permitted to "draw inferences regarding a defendant's behavior from objective evidence when sentencing the defendant," the circumstantial evidence that King-Price's significant other knew of his illegal conduct and participated with him in violating the law is attenuated. *People v Dickinson*, 321 Mich App 1, 23; 909 NW2d 24 (2017).

Crucially, the record reveals no evidence from which the trial court could infer that King-Price was a leader with respect to his significant other. As noted, there is a lack of evidence indicating that King-Price's significant other even participated in the offense. Nor is there evidence that she was aware of King-Price's purchase of the stolen credit-card information, made any independent purchases with the stolen credit-card information, or was present with King-Price while he made the purchases at issue. Indeed, the record reflects that the unlawful purchases were

made under King-Price's name only. The evidence indicates that "[King-Price] had multiple credit cards on file" with the resort. While his children were present at a retail store while King-Price was buying items, he charged them to the room under his own name. The only reference in the record to King-Price's significant other during the period that the offenses took place is to note that she was staying at the resort. This evidence is insufficient to support any finding that King-Price "guid[ed], preced[ed], show[ed] the way, direct[ed], or conduct[ed]" his significant other in the commission of any offense. *Rhodes*, 305 Mich App at 90.

In light of the above analysis, I am left with the definite and firm conviction that the trial court made a mistake by assessing 10 points on OV 14 based on its finding that King-Price was a leader in a multiple-offender situation involving either the unknown seller or his significant other. See *Dickinson*, 321 Mich App at 21 ("We will hold the trial court's factual determinations clearly erroneous only if we are left with a definite and firm conviction that the trial court made a mistake.").

I also write separately to share Justice Bolden's recent observation that there is "limited precedent currently in place to guide trial courts' scoring of [OV 14] . . . ." *People v Burrell*, ___ Mich ___, ___ (2026) (Docket No. 168279) (BOLDEN, J., concurring); slip op at 1. As Justice Bolden expressed:

> MCL 777.44 provides no definition of "leader," and our caselaw defining the scope of the term is limited. Michigan courts' existing decisions provide general descriptors and nonexclusive considerations, but they offer little concrete guidance on how to distinguish between a participant who takes initiative during a fluid criminal episode and one who truly occupies a leadership role. As a result, trial courts may be left to infer leadership from isolated acts without clear standards for evaluating whether those acts reflect direction or authority over others. [*Id*. at ___; slip op at 1.]

This lack of guidance—particularly with respect to what a "leader" constitutes—presents a quandary for sentencing courts and may produce the sort of strained factual inferences that I believe occurred in this case.

Although there is limited precedent to illuminate the issue, I am unconvinced that the factual circumstances in this case involve the kind of conduct that the Legislature contemplated in enacting the sentencing guidelines for OV 14. I share Justice Bolden's interpretation "that [Michigan courts'] guidance enables trial courts' scoring of OV 14 at 10 points when the record demonstrates that a defendant exercised *some* measure of direction, coordination, or authority *over other participants*." *Id*. at ___; slip op at 2 (second emphasis added). Instructive on this point are the federal sentencing guidelines, which contain a similar sentencing enhancement where "the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . ." USSG

3B1.1(c).[1]  Application Note 4 to USSG 3B1.1 provides more insight into what constitutes a "leader" in the federal context:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Caselaw interpreting this leadership enhancement is also helpful to consider. For example, "Generally, a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted," and "[m]erely playing an essential role in the offense is not equivalent to exercising . . . control over other participants." *United States v Minter*, 80 F4th 753, 758 (CA 6, 2023) (quotation marks and citations omitted). Furthermore, in the context of drug offenses, "the exercise of control over a conspiracy's property, assets, or activities does not alone warrant a sentencing enhancement," *id*. (quotation marks and citation omitted), and a majority of the federal circuit courts have "held that an arm's length seller-buyer relationship cannot lead to a[n] . . . enhancement under § 3B1.1," *id*. at 759.

In similar circumstances to this case, federal courts have declined to apply a leadership or managerial enhancement where the defendant did not exercise sufficient control over other individuals involved in the scheme.[2]  Compare *United States v Davis*, 322 F Supp 2d 591, 592-593 (ED Pa, 2004) (determining that the managerial enhancement did not apply where the defendant used stolen credit-card information to purchase and resell computers and he did not exercise authority or control over other participants in the scheme), with *United States v Blanco-Rodriguez*, 755 F Appx 339, 342 (CA 5, 2018) (affirming application of the managerial enhancement where the defendant purchased stolen credit-card numbers that he sold to others for

---

[1] Federal statutes are not binding on Michigan courts interpreting our state statutes and the comparison of similar federal and state statutes is only as persuasive as the quality of analysis provided. *People v Rogers*, 338 Mich App 312, 326-327; 979 NW2d 747 (2021). Additionally, federal caselaw is not binding on this Court, but may be considered as persuasive authority. *Id*. at 327.

[2] It appears that only one other Michigan case has interpreted whether the purchaser of stolen credit-card information would qualify as a leader under MCL 777.44. See *People v Shaw*, unpublished per curiam opinion of the Court of Appeals, issued June 21, 2018 (Docket No. 337313), pp 2-3 (concluding the defendant was a leader in a multiple-offender situation where he pleaded guilty to using stolen credit cards to purchase merchandise and another person admitted to helping load the merchandise into defendant's car). "Unpublished opinions of the Court of Appeals are not binding upon this Court but may be persuasive." *People v Roy*, 346 Mich App 244, 251 n 2; 12 NW3d 183 (2023).

the purposes of obtaining retail merchandise and directed his purchasers to wire money to the original sellers).

While I recognize the differences between our state and federal sentencing schemes, the additional guidance on what constitutes "leadership" in the federal context further supports the proposition that the conduct involved in this case—an arms-length transaction involving the exercise of control over property, but no exercise of control over other individuals—does not constitute being "a leader in a multiple offender situation" for the purposes of interpreting MCL 777.44.

For the foregoing reasons, I respectfully dissent.


/s/ Mariam S. Bazzi