*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 29, 2024

v

No. 366466
Wayne Circuit Court
LC No. 21-002405-01-FC

PAGE CHEATOM,

        Defendant-Appellant.

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] her jury trial convictions for carrying a concealed weapon, MCL 750.227; assault with a dangerous weapon, MCL 750.82; malicious destruction of a building $200 or more, but less than $1,000, MCL 750.380(4); and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

The events underlying defendant's convictions took place on November 8, 2020. At trial, Nakia Perry testified that, on that day, she and defendant were involved in an argument that took place on social media. According to Perry, minutes later, she heard a car horn honking outside her house. As she looked out the front door of her house, Perry saw defendant get out of a tan Dodge Journey and approach the house with a gun. Perry testified that defendant banged on the front window of Perry's house with the butt of the gun until the window shattered and then drove away. Perry then went out to her front porch and called 911. Perry further testified that, while she was still on the phone, defendant drove by the house again and fired multiple gunshots at the house as she passed, breaking another window. Police arrived at Perry's house shortly thereafter but no shell casings were recovered from the scene.

Perry's next-door neighbor testified at trial that, on November 8, 2020, he was in his backyard when he heard a car horn honking and saw that the noise was coming from a light blue

---

[1] *People v Cheatom*, unpublished order of the Court of Appeals, entered October 10, 2023 (Docket No. 366466).

van. He testified that he heard a car door slam, screaming and yelling, glass breaking, and a door slam, and then saw the light blue van speed off down the road. A little later, he heard three gunshots and rushed into his house. He testified that he saw the same light blue van stopped along the curb, facing the opposite direction than it had previously sped off in, but that he never saw the driver.

Detroit Police Department (DPD) Officer Nicholas Wagner testified at trial that members of a special operations team executed a search warrant at defendant's house a few days later. Officer Brian Creech testified that officers found a nine-millimeter handgun, a magazine, and ammunition in defendant's house. Officer Thomas Love testified that he, alongside Sergeant Steven Kue,[2] searched a tan Dodge that was parked at defendant's house. According to Officer Love, while he was searching the passenger side of the car, Sergeant Kue searched the driver's side where he discovered a nine-millimeter shell casing. Sergeant Kue called Officer Love over to the driver's side of the car and pointed out the shell casing under the driver's seat. Officer Love then retrieved the casing. The sequence was recorded on Officer Love's body camera, but Officer Love did not mention Sergeant Kue in his police report. Officer Deandre Williams, the officer in charge of the case, testified that he did not see Sergeant Kue's name anywhere in the discovery packet and that Sergeant Kue did not create his own police report.

Defense counsel then made an oral motion for a mistrial, arguing that there had been a "*Brady/Giglio* violation." Defense counsel argued that Sergeant Kue had a history of allegations of police misconduct and that he was the subject of multiple DPD internal investigations. Defense counsel argued that the prosecution suppressed Sergeant Kue's involvement in the execution of the search warrant, that evidence of Sergeant Kue's involvement was exculpatory because defendant could use Sergeant Kue's record to raise a question as to whether the shell casing discovered in the Dodge had been planted there, and that the evidence was material because the shell casing was the sole piece of evidence connecting the gun found in defendant's house to the vehicle. The prosecution argued that there was not a *Brady* violation because Sergeant Kue did not create a police report and there were no *Brady/Giglio*-related materials or information regarding Sergeant Kue for the prosecution to produce, and that defense counsel had offered nothing of adequate substance to support his *Brady* claim. The trial court denied the motion, explaining that the prosecution was not "using [Sergeant Kue] to make their case" and "[t]here's nothing to suggest that evidence was hidden, anything was suppressed."

The jury acquitted defendant of eight charges: assault with intent to murder, MCL 750.83; discharge of a firearm in or at a building, MCL 750.234b(1); discharge of a firearm from a vehicle, MCL 750.234a(1)(a); assault with intent to do great bodily harm, MCL 750.84; and four felony-firearm charges predicated on the aforementioned offenses. The jury found defendant guilty of the remaining offenses: carrying a concealed weapon, assault with a dangerous weapon, malicious destruction of a building, and one count of felony-firearm. Defendant now appeals, arguing that the trial court erred by denying her motion for a mistrial based on the alleged *Brady* violation.

---

[2] The trial transcripts spell the sergeant's first name as "Steven," though it appears the correct spelling may be "Stephen."

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). An abuse of discretion occurs when the trial court renders a decision that falls outside the range of principled decisions. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). "Underlying questions of law are reviewed de novo, while a trial court's factual findings are reviewed for clear error." *Id.* "[T]his Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *Id.* (quotation marks and citation omitted).

The United States Supreme Court held in *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v United States*, 405 US 150, 154; 92 S Ct 763; 31 L Ed 2d 104 (1972) (quotation marks and citation omitted). Accordingly, to demonstrate a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *People v Chenault*, 495 Mich 142, 149-150; 845 NW2d 731 (2014) (quotation marks and citation omitted). "Stated differently, the components of a 'true *Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id.* at 150.

Defendant argues that the prosecution committed a *Brady* violation in two ways: (1) by suppressing Sergeant Kue's involvement in the investigation, and (2) by failing to call Sergeant Kue as a witness. We disagree. While Sergeant Kue may well have a troubling history, defendant has failed to demonstrate a *Brady* violation based upon it in this case. To start, defendant has failed to explain how the prosecution suppressed evidence simply by not calling Sergeant Kue as witness. Defendant points to neither record evidence nor legal authority to substantiate the notion that the prosecution in this case may have had some obligation to call Sergeant Kue as a witness or that its failure to do so amounted to or resulted in the suppression of evidence. It is well established that a party "may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position." *Seifeddine v Jaber*, 327 Mich App 514, 519; 934 NW2d 64 (2019).

Defendant's argument that the prosecution suppressed evidence of Sergeant Kue's involvement in the case fares slightly better. The government is responsible for evidence within its control, including evidence unknown to the prosecution. *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (2015). "[E]ven though due process does not generally require the prosecution to seek and find exculpatory evidence or to search for evidence that will support a defendant's case, the individual prosecutor does have a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Dimambro*, 318 Mich App at 213 (cleaned up). There is some evidence in the record to support defendant's contention that the prosecution, either willfully or inadvertently, suppressed Sergeant Kue's involvement. MCL 767.40a(1) states that the prosecution "shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." While it is unclear from the record to what extent the prosecution complied with MCL

767.401a(1), Sergeant Kue's name was not on the prosecution's witness list and it appears to be undisputed that he was not named in any police report documenting the execution of the search warrant. And Officer Williams, the officer in charge, testified that he had not seen Sergeant Kue's name listed anywhere in the discovery packet. The limited record before us thus provides some support for the argument that the prosecution was obligated to disclose Sergeant Kue's identity and role in the investigation, but failed to do so.

Even assuming, however, that the record adequately supports defendant's contention that the prosecution suppressed Sergeant Kue's involvement, defendant has not met her burden of establishing the remaining two elements of a *Brady* violation: favorability and materiality. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Chenault*, 495 Mich at 150. Defendant argues that evidence of Sergeant Kue's involvement in the search would have been favorable to her defense because she would have been able to "bring[] to light, for the jury to hear, his history of planting evidence." Both before the trial court and on appeal, however, defendant has failed to adequately substantiate that position—to identify, for instance, the specific aspects of Sergeant Kue's record at the time of trial that defendant would have sought to use for that purpose, or to explain in any particular detail how that information would have been admitted and used at trial.[3]

Nor has defendant shown that the evidence would have been material. As our Supreme Court has explained:

> To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This standard does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [*Id.* at 150-151 (cleaned up).]

Defendant argues that the shell casing found by Sergeant Kue is the sole piece of evidence linking the bullets fired at Perry's house to the gun found in defendant's house. But again, defendant has not substantiated or explained in any meaningful detail how she would have actually made use of Sergeant Kue's history at trial, and even assuming the jury could have been made aware of that history in some form or another, defendant has offered nothing but speculation to connect that history to the shell casing in this case. Furthermore, there was other circumstantial evidence offered at trial, unrelated to the shell casing or Sergeant Kue, in support of the allegation that defendant fired gunshots at Perry's house. And finally, regardless of its import to that allegation,

---

[3] In her appellate brief, defendant cites to an online news article regarding Sergeant Kue's troubling track record, but that article is from 2023—after defendant's trial—and defendant fails to point to any evidence in the record of this case that substantiates the article's content or her contention that the suppressed evidence would have been favorable to her defense.

the shell casing was only relevant to defendant's convictions insofar as the jury found her guilty of offenses stemming from the firing of the gun at Perry's house. It had no particular bearing on the offenses stemming from the allegation that defendant smashed in Perry's window with the butt of a gun. The distinction between those two alleged acts played out in the jury's verdict. The jury acquitted defendant of each of the offenses which could only be supported by a finding that defendant fired the gun. Indeed, the reasonable inference from the jury's decision is that it was unconvinced by the proofs offered at trial regarding the shooting and convicted defendant solely for breaking Perry's window with the butt of the gun. Defendant has offered nothing to suggest otherwise, or to substantiate the notion that the verdict the jury reached is not worthy of confidence. See *Chenault*, 495 Mich at 150-151. On this record, we cannot conclude that, as a result of any suppression of Sergeant Kue's involvement in this case, defendant did not receive a fair trial. *Id.*

Based on the foregoing, we do not see reversible error in the trial court's denial of defendant's motion for a mistrial based on the alleged *Brady* violation. Defendant's broad concerns regarding Sergeant Kue are well taken, but defendant has failed to demonstrate entitlement to relief based upon them in this case.

Defendant alternatively argues that the prosecution engaged in misconduct by suppressing Sergeant Kue's involvement in the case. The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Defendant, however, concedes that this prosecutorial misconduct argument is based on the same alleged *Brady* violation already discussed, and we find it fails for the same fundamental reasons. Defendant has not shown that she was denied a fair and impartial trial based on the prosecution's conduct in this case with respect to Sergeant Kue.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani

-5-