*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRADLEY SCOTT JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2025
10:55 AM

No. 366794
Kent Circuit Court
LC No. 19-005793-FH

Before: SWARTZLE, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's sentence after pleading guilty to six felony counts: (1) child sexually abusive commercial activity, MCL 750.145c(2); (2) two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b); (3) possession of child sexually abusive material, MCL 750.145c(4)(a); (4) using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(e); and (5) accosting children for immoral purposes, MCL 750.145a. Except for the limited ministerial task of correcting the score for offense variable 13, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In December 2018, defendant and Tauna Parfait, his girlfriend and codefendant, took defendant's daughter and her two half siblings to a Grand Rapids Inn, where defendant and Parfait instructed the girls to get into their bathing suits and took pictures of them. Defendant also took one of the girls into the bathroom, where he sexually assaulted her. The children later told their mother, who reported the assault to the Kent County Sheriff's Department. As part of the investigation, a detective searched defendant's phone and discovered child sexual abuse material, as well as Internet searches for "[h]ow to find young girls for sale," "how do preteen girls get sold

---

[1] *People v Johnson*, ___ Mich ___; 4 NW3d 340 (2024).

for sex," and "what states are common to traffic little girls." Defendant was charged as noted, with Parfait as his codefendant.

Defendant pleaded guilty to all charges. The trial court originally sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve 20 to 60 years in prison for Counts 1, 2, 3 and 5, and 40 months to 15 years for Counts 4 and 6, with the sentences to run concurrently. The parties subsequently stipulated that resentencing was appropriate because offense variable (OV) 19 was incorrectly assessed points. The trial court thereafter vacated defendant's original sentence and ordered the presentence investigation report (PSIR) be updated to reflect the new score and corresponding sentencing guidelines range, which also included an upward departure from defendant's sentencing guidelines because of his postconviction behavior, which included attempting to obtain pictures of young girls while he was incarcerated.

At resentencing, because of defendant's conduct while incarcerated, the trial court increased defendant's sentence to 35 to 120 years of imprisonment for Counts 1, 2, 3, and 5, and 5 to 15 years of imprisonment for Counts 4 and 6. Defendant applied in this Court for leave to appeal his new sentence on the basis that the trial court neglected to articulate a rationale for the extent of its upward departure. In lieu of considering defendant's appeal, this Court vacated the resentence and remanded the case for a second resentencing, instructing the trial court that if it imposed an upward departure, then it must articulate its reasoning.[2]

At the second resentencing, the trial court retained the same upward departure. The trial court stated that defendant had a genuinely "low prospect for rehabilitation" and that the length of the sentence was motivated by the court's "desire to lock defendant away from children for the longest possible time allowed by law." Defendant again applied for leave to appeal, which was denied for lack of merit.[3] Acting *in propria persona*, defendant applied for leave to appeal in the Michigan Supreme Court. In lieu of granting leave, the Supreme Court remanded the case to this Court to consider as on leave granted. *People v Johnson*, ___ Mich ___; 4 NW3d 340 (2024).

## II. SENTENCE PROPORTIONALITY

Defendant first argues that the trial court imposed a grossly disproportionate sentence that exceeded the minimum sentencing guidelines by 100 months. We disagree.

### A. STANDARD OF REVIEW

We review all sentences for reasonableness. *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion" by imposing a sentence that is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). "[A]ppellate courts must

---

[2] *People v Johnson*, unpublished order of the Court of Appeals, entered February 11, 2022 (Docket No. 359929).

[3] *People v Johnson*, unpublished order of the Court of Appeals, entered August 31, 2023 (Docket No. 366794).

review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *Posey*, 512 Mich at 352 (opinion by BOLDEN, J.). "A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant." *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019).

## B. ANALYSIS

Although a court must consider the sentencing guidelines, the guidelines are advisory only. See *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "[A] trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender, in an effort to balance society's need for protection against its interest in rehabilitation of the offender." *People v Sabin* (*On Second Remand*), 242 Mich App 656, 661; 620 NW2d 19 (2000). Accordingly, the trial court was not bound to select a minimum sentence that was within the range provided under the sentencing guidelines; appellate courts will review a decision to depart only for reasonableness. See *Lockridge*, 498 Mich at 365.

To determine whether a departure sentence is more proportionate than a sentence within the guidelines range, a trial court may consider: "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). When making this determination and sentencing a defendant, a trial court must articulate its rationale for departing from the recommended range. *Id.*; see also MCL 769.34(3)(b).

The recommended minimum sentencing range was 99 to 320 months, but the trial court imposed a minimum sentence of 35 years (420 months), which exceeded the range, therefore, by 100 months. The trial court articulated its rationale for its decision to exceed the sentencing guidelines, stating that "the departure was based solely on [defendant's] conduct post-sentencing." The court explained that it originally was satisfied to impose a within-guidelines minimum sentence of 20 years of imprisonment on the basis of the facts in the PSIR, but that the events that occurred after defendant's first sentence led to the upward departure.

While incarcerated, defendant repeatedly requested via mail that a friend send him photos of young girls from television commercials. When questioned later, defendant stated that the pictures helped him describe characters in his writing, which included a "fictional book project" about prepubescent girls engaging in sexual activity, and a "fantasy" about a man and a woman sexually assaulting two girls. Defendant argued at length that his writings were therapeutic and an "accepted method in psychological treatment to try to purge [his] soul." He further claimed that the pictures of little girls that he requested were "nothing sexual." Defendant told the trial court that he had been abused as a child and that he had been diagnosed with gender dysphoria. He elaborated that the book was based on his childhood and that he wrote as if he was the little girl in the stories. Thus, defendant claimed that he requested the pictures as a "defense mechanism"—if he "put a different face to it," then that would help with his book.

In addition to the photographs, defendant lied to the trial court in an attempt to create a new defense to his crime, namely that Parfait had drugged him before he abused the child. Defendant

stated that Parfait reached out to him to admit to the drugging; however, in truth, defendant mailed Parfait an affidavit that he had drafted, and pressured her to sign it. At the resentencing, the trial court began by articulating its focus on defendant's attempt to suborn perjury from his codefendant:

> You had said to me on the record that you had had no contact with Ms. Parfait and that Ms. Parfait had contacted you somewhat out of the blue saying that she had drugged one of your drinks, unbeknownst to you, . . . that caused you to become involuntarily intoxicated and then in some respects diminish your culpability, if not completely, for the crime that you committed.

> Of course, unbeknownst to you, evidently the prison was monitoring your mail and came to find out that in fact you had contacted Ms. Parfait and asked her to sign what was obviously a false affidavit.

> So when I talk about manipulating, you were trying to manipulate Ms. Parfait to get her to sign a perjurious affidavit. But really what you were doing is trying to enlist Ms. Parfait into a conspiracy to commit fraud against the Court.

> \* \* \*

> And it did show and it does show the lengths you will take to avoid the responsibility for your crime, and it bears directly on your credibility and your likelihood of rehabilitation. And so what that incident did is it caused me to conclude that true rehabilitation of your criminal impulses is unlikely even after years of incarceration.

The trial court also highlighted defendant's "disturbing and grotesque sexual fantasies of grown men and woman raping prepubescent girls." Regarding defendant's writings on this topic, the trial court determined that the writing reflected "fictitious sexual fantasies . . . for the purpose of gratification" and not for therapy, as defendant argued. And because defendant admitted to acting on his sexual fantasies, the court expressed "genuine concern for the safety of the children in whatever community [defendant would] eventually end up in." The trial court noted that defendant's repeated requests for pictures of little girls from commercials created a "strong indication that your fantasies were continuing unabated while in your jail cell, and it is exploitive. You can argue this was therapy, but you're still exploiting the images of these children."

Turning to its justification for the extent of the 100-month departure from the sentencing guidelines, that trial court identified the four goals of sentencing: punishment, deterrence, rehabilitation, and society's protection. According to the trial court, the original sentence addressed punishment and deterrence, and the upward departure addressed rehabilitation and society's protection:

> As I have determined, Mr. Johnson, I do believe, given the objective and verifiable facts presented to me through the course of these sentencings that you genuinely have a low prospect for rehabilitation. I believe that society needs protection, that society's need for protection outweighs any prospect for rehabilitation.

Thus, the extent of the departure is a means to protect young children from future abuse, and I believe that is warranted. My length of the sentence is motivated by my desire to lock you away from children for the longest possible time allowed by law.

It's not a decision I've reached lightly, and I want to assure you it's not grounded in some personal philosophy I have about how to treat defendants charged with these crimes. It is a decision that is especially tailored for you. It is a decision based upon your past criminal history as well as the specific factors I just set forth.

"The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). The trial court more than adequately articulated its rationale for imposing the sentence and did not abuse its discretion by imposing an unreasonable sentence, given defendant and the circumstances. See *Steanhouse*, 500 Mich at 459-460. In particular, defendant repeatedly lied to the court and "reach[ed] from behind the walls of a prison in order to victimize other people." Moreover, defendant concedes that "[m]ost of the post-sentencing conduct—if true—would not be anticipated by the guidelines." Ultimately, the trial court's reasons form a mix of factors not considered, or not adequately considered, by the sentencing guidelines, as well as a balance of society's need for protection against defendant's potential for rehabilitation. See *Dixon-Bey*, 321 Mich App at 524-525; *Sabin*, 242 Mich App at 661. Accordingly, the trial court did not abuse its discretion by relying on these reasons to exceed the sentencing guidelines.

III. CHALLENGE TO THE PSIR

Defendant also contends on appeal that certain facts in the PSIR were incorrect and led the trial court to impose a sentence greater than it should have been had the court properly understood the facts of the case. We disagree.

A. STANDARDS OF REVIEW

"The trial court's response to a claim of inaccuracies in the presentence investigation report is reviewed for an abuse of discretion." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). A court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id*. The Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines, and the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court's factual determinations are clearly erroneous only if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).

B. ANALYSIS

Initially, we must address the prosecution's assertion that defendant has waived his ability to challenge the facts in the PSIR. At his original sentencing in 2019, defendant did not challenge the accuracy of any of the facts in the PSIR. The trial court asked if defendant had any "additions,

corrections, or deletions," and defense counsel briefly contested the amount of days for which defendant should receive credit for serving time in jail. After that, the trial court inquired whether there was "anything else as far as the PSI goes" and defense counsel responded, "No, your Honor."

"Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citations omitted). "A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646 (2015) (quotation marks and citation omitted). While defendant did not challenge the accuracy of the PSIR at his first sentencing, he did at subsequent hearings during resentencing. He has, therefore, preserved his ability to challenge the PSIR. See *id*.

Due process is satisfied if the sentence is on the basis of accurate information and the defendant had a reasonable opportunity at sentencing to challenge the information. *People v Zinn*, 217 Mich App 340, 347-348; 551 NW2d 704 (1996). When the accuracy of the presentence report is challenged, the trial court must allow the parties to be heard and must make a finding as to the challenge or determine that the finding is unnecessary because the court will not consider it during sentencing. MCR 6.425(E)(2). The defendant has the burden of going forward with an effective challenge. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). Whether a defendant satisfies the requirement for an effective challenge with a flat denial of a contrary factual assertion, or whether an affirmative factual showing is required, depends on the nature of the dispute. *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

In this case, defendant's challenge was neither a "flat denial" of the facts in the PSIR nor an "affirmative factual showing." He raised his first challenge to the PSIR at his resentencing in 2021 regarding OV 8, which was not assessed any points at the first sentencing in 2019. Under OV 8, MCL 777.38(1), a court must assess 15 points when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense[.]" On this point, defendant stated that he wanted to challenge the part of the PSIR that indicated that he took the child into the bathroom alone—ostensibly a place of greater danger—and sexually assaulted her. He argued that he did not touch the child in the bathroom; rather, the "contact" happened while she was standing on the bed. To support this claim, he pointed to a page of the police report that stated that defendant touched the child while she was on the bed. However, the police report does not contradict the PSIR. The police report describes how defendant took the child to the bathroom, and then describes what happened "[a]fter moving to the main part of the hotel room." Contrary to defendant's argument at his resentencing, therefore, the police report demonstrates that there were two instances of sexual assault—once in the bathroom and again on the bed. Defendant did not support his challenge; therefore, the challenge was not effective, and the trial court's determination to rely instead on the PSIR was not an outcome that was outside the range of reasonable and principled outcomes. See *Waclawski*, 286 Mich App at 689.

Defendant also contends that the trial court improperly assessed 10 points under OV 14. MCL 777.44(1)(a) requires that a trial court assess 10 points when "[t]he offender was a leader in a multiple offender situation." The statute does not define "leader" or "multiple offender situation." However, "the plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted). A defendant may be involved in a multiple-offender situation even when accompanied by only one other person and even when that person is not charged with the same crime for which the defendant was convicted. *Id*. Regarding who acts as a "leader," "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *Id*. (quotation marks and citation omitted). When determining whether a defendant was a leader under OV 14, "a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Id*. (quotation marks and citation omitted).

A preponderance of the evidence supported that defendant was a leader in a multiple-offender situation and that the trial court correctly assessed 10 points for OV 14. See *Hardy*, 494 Mich at 438. First, the evidence supports that this crime was a multiple-offender situation. In making this determination, the trial court highlighted that defendant was accompanied by his codefendant, Parfait, whose involvement was sufficient to create a multiple-offender situation. See *Dickinson*, 321 Mich App at 22. Next, in finding that defendant acted as the leader in the multiple-offender situation, the trial court stated, "the PSIs indicate that it was Mr. Johnson who arranged picking up the children who were ultimately victimized here. Picking up the children and arranging to pick up the children. So, I believe, and I rule that OV 14 was properly scored." The PSIR supported that conclusion, when it indicates that the children's mother "stated that [defendant] arranged to take the three children to a hotel with a water park overnight."
Because there was evidence in this case of a multiple-offender situation, i.e., a situation in which both defendant and Parfait, his codefendant, violated the law together, and that between the two, defendant acted as the leader, the trial court did not err by assessing 10 points for OV 14.

As a final matter concerning the PSIR, it appears that when the PSIR was updated for the resentencing in August 2021, the original assessment of 25 points under OV 13 was incorrectly reduced to 10 points. Defendant never challenged the assessment of points under OV 13, and the trial court never ordered this change. The correct starting OV score at the resentencing hearing, then, should have been 65 points rather than 50 points. With the added 15 points that the trial court assessed for OV 8, defendant's total OV score was 80 points, resulting in OV Level VI and Prior Record Variable Level E—and a minimum sentencing guidelines range of 99 to 320 months. See MCL 777.16g; MCL 777.63. That is exactly the range that the prosecution confirmed to the trial court at the resentencing and the range that is reflected in handwritten changes to the 2020 PSIR. This scoring error did not affect defendant's minimum sentencing guidelines range; therefore, resentencing is not required. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Nevertheless, we remand for the limited ministerial task of correcting the score for OV 13 in the sentencing information report. See *People v Charboneau*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364596); slip op at 10; *People v Baskerville*, 333 Mich App 276, 302-303; 963 NW2d 620 (2020).

## IV. CONSTITUTIONALITY OF MCL 769.1k(1)(b)(*iii*)

Lastly, defendant argues that MCL 769.1k(1)(b)(*iii*) is facially unconstitutional on the basis that it incentivizes judges to convict defendants and assess costs to fund their courts. MCL 769.1k(1)(b)(*iii*) permits a trial court to impose court costs on a convicted defendant that are reasonably related to the actual costs incurred in processing a criminal case. This Court has already considered this issue and determined that the statute is not unconstitutional. *People v Johnson*, 336 Mich App 688, 705; 971 NW2d 692 (2021). A published opinion of this Court has precedential effect under the rule of stare decisis and binds lower courts and tribunals. MCR 7.215(C)(2); MCR 7.215(J)(1). Therefore, we reject defendant's argument that the trial court violated defendant's right to due process when it assessed court costs under MCL 769.1k(1)(b)(*iii*).

Defendant's sentence and the trial court's imposition of court costs are affirmed. However, we remand for the limited ministerial task of correcting the score for OV 13. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray