*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 12, 2025
2:28 PM

Plaintiff-Appellee,

v

No. 362222; 367236
Jackson Circuit Court
LC No. 2021-001667-FC

TYRONE DEMARCUS PARKER,

Defendant-Appellant.

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

In this consolidated appeal,[1] defendant appeals as of right his jury convictions for one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c), and one count of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. He was sentenced to 25 to 50 years' imprisonment for each CSC-I conviction, 8 to 15 years' imprisonment for CSC-III, and 5 to 10 years' imprisonment for AWIGBH. We affirm defendant's convictions but vacate one of his CSC-I sentences and remand for resentencing on that count.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from three sexual assaults and a stabbing defendant committed against the victim, KC, whom he dated for several months in 2014 when KC was 16 years old and defendant was 18 years old.

At trial, KC testified about three instances in which defendant sexually assaulted her. The first incident occurred in July 2014, while KC and defendant were dating. Defendant became upset with KC, pulled her on top of him, and forcibly had sexual intercourse with her. In November 2014, defendant assaulted KC again after they got into an argument over defendant messaging

---

[1] *People v Parker*, unpublished order of the Court of Appeals, entered September 19, 2023 (Docket Nos. 362222 and 367236).

other girls online. During that incident, defendant held KC down by her throat, intermittently cutting off her breathing, and again forced her to have sexual intercourse. A third incident occurred in January 2015, after KC attempted to end their relationship. Defendant insisted that they were not breaking up, drove to KC's residence, and took her to a park. There, he climbed over the center console of his vehicle, held her down by her throat, and forcibly had sexual intercourse with her again. Defendant and KC ended their relationship shortly thereafter.

Defendant committed one more assault against KC in March 2015, on her seventeenth birthday. He approached her outside her residence, demanded she "give [him his] shit," pushed her against a vehicle, hit her in the eye, and then stabbed her in the stomach before fleeing. KC underwent emergency exploratory surgery as a result of the stab wound. Fearing what defendant might do if he found out that she reported him, KC did not initially identify defendant as her assailant to the police. However, she did obtain a personal protection order against him.

At trial, the prosecution also presented the testimony of DP as an other-acts witness. DP testified that she met defendant online in 2014, when she was 15 years old. In August 2014, she invited defendant to her residence while her parents were at work, but her father came home early, kicked defendant out, and returned to work. After DP's father left again, defendant knocked on the door and asked to come back inside. Although she repeatedly told him no, defendant opened the door to the front porch and sat in a chair. He then grabbed her, pulled her onto his lap, and physically restrained her. She eventually escaped his grasp and sat on the floor of the porch. He then crawled over to her, forcibly removed her pants, laid his weight on her, and forcibly had sexual intercourse with her. She tried to push him off, but he did not stop until her father returned home and yelled at him to leave. Based on that incident, defendant pleaded guilty to CSC-III, accosting a child for immoral purposes, MCL 750.145(A)(A), and using a computer to commit a crime, MCL 752.7973E. A judgment of sentence for those convictions was admitted into evidence at the instant trial.

During the trial, Lance Handlogten, a former employee of the Kalamazoo County Prosecutor's Office Sexual Assault Kit Initiative (SAKI), testified about two interviews he conducted with defendant in 2018 regarding DP's and KC's allegations. Defendant initially denied the allegations but later admitted that he stabbed KC and sexually assaulted both DP and KC. Defendant wrote apology letters in which he told KC that he "wanted to give [her] an apology for the actions [he] made against [her] with the knife and the rape" and DP that he was "sorry for those actions that night on the porch and in the house." Both letters were admitted into evidence.

Detective Joseph Merritt of the Ingham/Jackson regional SAKI testified that he was assigned to the investigation in 2020. While reviewing the police file, he discovered that Handlogten had conflated some details concerning the sexual assaults and stabbing of KC during the previous two interviews. As a result, Detective Merritt conducted another interview with defendant in May 2021. During that interview, defendant admitted that he sexually assaulted DP and KC and stabbed KC, and a video of the interview was entered into evidence. Detective Merritt testified that defendant "admit[ted] that he's a liar and . . . lies about things to make himself look better." Defense counsel objected on grounds of speculation and moved for a mistrial. The trial court sustained the objection but denied the request for a mistrial.

After the presentation of evidence, the jury convicted defendant of CSC-III for the July 2014 sexual assault (Count 1), one count of CSC-I for the November 2014 sexual assault (Count 2), one count of CSC-I for the January 2015 sexual assault (Count 3), and AWIGBH for the March 2015 stabbing (Count 4). Defendant was sentenced as described above and now appeals.

## II. DISCUSSION

## A. MOTION FOR MISTRIAL

Defendant first asserts that the trial court erred by denying his motion for a mistrial because Detective Merritt repeatedly invaded the province of the jury during his testimony by vouching for KC's credibility and impugning defendant's credibility, thereby depriving defendant of his right to a fair trial. Defendant further argues that the prosecution exacerbated the prejudice caused by that testimony by referencing it during closing arguments. We disagree.

We review a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). In the context of a motion for a mistrial, an abuse of discretion "will be found only where denial of the motion deprived the defendant of a fair and impartial trial." *People v Manning*, 434 Mich 1, 7; 450 NW2d 534 (1990). "For a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Dickinson*, 321 Mich App at 18 (citation omitted). We review questions of law, including whether a defendant was deprived of due process, de novo. *People v Odom*, 276 Mich App 407, 421; 740 NW2d 557 (2007).

Defendant points to numerous instances in which he claims Detective Merritt improperly commented on KC's and defendant's credibility. Specifically, he cites: referring to KC as a "victim" and stating that "[v]ictims didn't ask to be victims"; calling defendant a liar; and testifying about defendant's body language during the May 2021 interview and comparing defendant to statistics regarding sexual offender recidivism despite not being qualified as an expert witness. It is a "well-established principle that it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014) (quotation marks and citation omitted). "[S]uch testimony is inadmissible because it invades the jury's province to determine witness credibility." *People v Del Cid*, 331 Mich App 532, 547; 953 NW2d 440 (2020). However, "a police officer may testify about his or her perceptions during the course of an investigation of whether a defendant was being truthful." *People v Lowrey*, 342 Mich App 99, 109; 993 NW2d 62 (2022).

As an initial matter, we disagree that Detective Merritt improperly vouched for KC's credibility. Detective Merritt referred to KC as a "victim" throughout his testimony, but referring to a complaining witness as a victim is not prohibited under Michigan law. See *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 16-19. Indeed, MCL 750.520a(s) defines "victim" as "the person alleging to have been subjected to criminal sexual conduct." KC alleged that she was subjected to criminal sexual conduct perpetrated by defendant and was, therefore, a "victim" within the meaning of the statutes criminalizing CSC. Furthermore, when asked about what steps he took during his investigation, Detective Merritt testified that his "first step was to meet with her, let her know that [he] had the investigation, and to ask for her permission to move forward with [the] investigation because it

-3-

really depends on her[,] as it should. Victims didn't ask to be victims. Victims were victimized." That testimony, in context, does not vouch for KC's credibility or suggest that Detective Merritt had special knowledge of her truthfulness; it merely provides context for the steps he undertook during his investigation.

The balance of defendant's claims regarding Detective Merritt's testimony are similarly without merit when considered in context. When Detective Merritt referred to defendant as a liar during his testimony, it was in relation to the May 2021 interview in which defendant admitted to lying to investigators about several facts. Those included claims that he was a sniper in the military, left college for active-duty service when in reality he was academically discharged from college, did not know DP, and never owned a knife, among other things. Defendant also admitted in that interview that he sexually assaulted KC and DP and stabbed KC, despite previously denying the allegations. Accordingly, by stating that defendant admitted he was a liar, Detective Merritt did not improperly comment on defendant's credibility; he merely recited defendant's own statements from the interview.

Likewise, when considered in context, Detective Merritt's testimony regarding defendant's nonverbal body language did not constitute improper commentary on defendant's credibility. Detective Merritt testified that defendant initially admitted he sexually assaulted and stabbed KC but "started to try and retract the confession" as the interview progressed. At that point, defendant's "non-verbal communication [took] a slightly more confrontational tone" that Detective Merritt attributed to defendant's realization that "it was bad to have admitted things." Defendant claims that those statements insinuated that Detective Merritt had special knowledge that could explain defendant's behavior even though Detective Merritt was not qualified as an expert witness. However, in *People v Brown*, 326 Mich App 185, 197; 926 NW2d 879 (2018), this Court held that a nurse's testimony about a victim's body language was based not on specialized knowledge but on the nurse's perception of the witness. Accordingly, we determined that such testimony by a lay witness was admissible under MRE 701. *Id*. The same is true here. Detective Merritt's comments about defendant's body language were based solely on his perception of defendant and offered to explain his approach to the interview. That testimony thus did not constitute improper commentary on defendant's credibility.

Nor did Detective Merritt invade the province of the jury by testifying about sexual offender recidivism statistics. Detective Merritt testified that, although defendant initially claimed he had only engaged in sexual intercourse with KC once in June 2014 and that it was consensual, he later admitted to other instances of sexual intercourse with her. That admission "resolved" some concerns Detective Merritt had regarding discrepancies in defendant's statements during his first two interviews because

> [i]n sexual assault investigations[,] seventy percent of offenders, they are rapists that commit rape are [sic] serial in nature. That's identified as . . . more than two offense[s] with a cooling off period. Ninety five percent of rape is committed by [a] serial rapist. So if you think about that[,] it's kind of a smaller population that's responsible for more than nine out of every ten rapes. So issue [sic] as it pertained to this victim was cleared up for me.

Detective Merritt offered that testimony to explain why defendant's admission resolved his concerns about the first two interviews. While it is unclear to this Court how those statistics resolved Detective Merritt's concerns, it is evident from the context that Detective Merritt's testimony did not improperly comment on defendant's credibility.

Even if we agreed that Detective Merritt improperly commented on defendant's and KC's credibility, the trial court did not abuse its discretion by denying defendant's motion for a mistrial because defendant has not established that he was prejudiced by the purportedly improper testimony. Excluding the testimony that defendant criticizes, there was ample other evidence to support the jury's verdict. KC testified that defendant forcibly sexually assaulted her on three separate occasions. Handlogten testified that defendant confessed to sexually assaulting and stabbing KC during his first two interviews and Detective Merritt testified that defendant confessed to sexually assaulting and stabbing KC during his May 2021 interview. Defendant also admitted to his misconduct in his letter to KC in which he apologized "for the actions [he] made against [her] with the knife and the rape." Because ample other evidence supported the jury's verdict, defendant cannot establish that he was prejudiced by Detective Merritt's testimony. The trial court therefore did not abuse its discretion by denying his motion for a mistrial.

## B. SENTENCING—OFFENSE VARIABLE 7

Defendant next submits that the trial court erred by assessing 50 points for Offense Variable (OV) 7 with respect to his two CSC-I convictions. The prosecution concedes on appeal that the trial court so erred on Count 2 but argues that the trial court appropriately assessed OV 7 regarding Count 3. Consistent with that concession, and because the correction alters the guidelines range,[2] we vacate defendant's sentence as to Count 2 and remand for resentencing on that count. Because the trial court did not err in its assessment as to Count 3, we affirm defendant's sentence on that count.

We review the factual basis for a trial court's assessment of offense variables for clear error and review de novo "whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v Teike*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363705); slip op at 2 (citation omitted). "Clear error exists when this Court is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted). The trial court's factual findings "must be supported by a preponderance of the evidence." *Id*. (citation omitted).

Because due process requires that a defendant be sentenced only on the basis of accurate information, "a sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). OV 7 addresses aggravated physical abuse, MCL 777.37(1), and "is designed to respond to particularly heinous instances in which the criminal acted to increase a victim's fear by a substantial or considerable amount," *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (cleaned up). A score of 50 points for OV 7 is appropriate when "[a] victim

---

[2] The correction reduces defendant's total OV score from 85 to 35 and his OV level from V to II. As a result, the guidelines minimum range changes from 126-210 months to 51-85 months and entitles defendant to resentencing. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "In determining the proper assessment of points for OV 7, we must consider whether the defendant engaged in conduct beyond the minimum required to commit the offense and, if so, whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *People v Alexander*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364063); slip op at 14 (quotation marks and citation omitted).

The trial court appropriately assessed 50 points for OV 7 with respect to Count 3, which pertained to the January 2015 sexual assault. Regarding that count, defendant was convicted of CSC-I contrary to MCL 750.520b(1)(c), which provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [s]exual penetration occurs under circumstances involving the commission of any other felony." For this count, the jury was instructed to find defendant guilty if it determined that the sexual act occurred under circumstances involving the commission of an assault with intent to do great bodily harm by strangulation or by imprisonment. At sentencing, the trial court assigned 50 points for OV 7 regarding Count 3, finding that defendant treated KC with excessive brutality by strangling her during the sexual assault. That finding was supported by the record evidence. KC testified that defendant drove her to a park, climbed over the center console onto the passenger seat where she was sitting and prevented her from leaving. Defendant then put his hands around her throat and choked her to the point that she could not breathe. Defendant strangled her throughout the assault and only reduced the pressure on her throat when she made a choking sound. He bit her lip during the assault and would not let her put her underwear back on afterward.

"[I]t is well settled that when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998). A defendant can be "properly convicted of CSC I even if some of [the] jurors believed that he committed the offense solely on the basis of one aggravating circumstance, while the rest of the jurors believed that he committed the offense solely on the basis of another one of the aggravating circumstances." *Id*. In this case, because defendant was charged under alternate theories—the prosecution presented evidence that defendant both strangled KC and imprisoned her in the vehicle—the jury did not need to unanimously convict defendant under one theory. That defendant trapped KC in the vehicle *and* strangled her supports an inference that he "engaged in conduct beyond the minimum required to commit the offense" and "intended to make [KC's] fear or anxiety greater by a considerable amount." *People v Rodriguez*, 327 Mich App 573, 579; 935 NW2d 51 (2019) (quotation marks and citation omitted). The trial court did not err by assessing 50 points for OV 7 with respect to Count 3.

## C. DEPARTURE SENTENCE

Defendant asserts that the trial court abused its discretion by sentencing him above the guidelines minimum range on Counts 2 and 3 without adequately articulating its justification for the departure. Because we vacate defendant's sentence on Count 2 due to the parties' concession of error in scoring OV 7, we will not address this issue for that count. We affirm with respect to Count 3.

"The standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is an abuse of discretion." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (cleaned up). This standard of review applies to both within-guidelines sentences and sentences that depart from the guidelines. *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J.); *id.* at 361 (CAVANAGH, J., concurring); *id.* at 413 (WELCH, J., concurring). "[T]he relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Dixon-Bey*, 321 Mich App at 520 (quotation marks and citation omitted). "A trial court abuses its discretion if the imposed sentence is not 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7, quoting *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). Further, "a trial court necessarily abuses its discretion when it makes an error of law." *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022).

Although the sentencing guidelines are advisory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Trial courts must consult the guidelines when imposing a sentence. *Id.* "[A] judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing." *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990), abrogated in part on other grounds by *Steanhouse*, 500 Mich at 477. Under the sentencing guidelines, the trial court is required to score both offense and prior record variables to determine the appropriate sentence range. *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Offense variables consider the nature and severity of the sentencing offense and prior record variables take into account the defendant's criminal history. *Id.* at 263-264. "Therefore, the appropriate sentence range is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant's criminal history." *Id.* at 264.

Under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Dixon-Bey*, 321 Mich App at 521 (quotation marks and citations omitted). In making a proportionality assessment, a trial court must consider the nature of the offense and the background of the offender. *Milbourn*, 435 Mich at 651. A trial court imposing a sentence may consider numerous factors under the proportionality standard, including: "(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines, and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expression of remorse, and the defendant's potential for rehabilitation." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (citation omitted).

With respect to Count 3, defendant's sentence of 25 to 50 years' imprisonment represents an upward departure from the guidelines minimum range of 135 to 225 months' imprisonment. When a trial court imposes a sentence that deviates from the guidelines minimum range, it "must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different

sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citation omitted). In assessing whether a departure sentence is more proportionate than a sentence within the guidelines range, relevant factors include "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *Id*. (citations omitted). If a trial court fails to provide adequate justification for imposing a departure sentence, it abuses its discretion. *Steanhouse*, 500 Mich at 476. "[I]n such a situation, [this Court] must remand the case to the trial court for resentencing or rearticulation" of its reasons for departing from the guidelines range. *Babcock*, 469 Mich at 259.

The trial court explained that it was departing from the guidelines minimum range because defendant's "violence seem[ed] to be getting worse and worse." The trial court reasoned as follows:

> This Court is also satisfied that this is a pattern that is a scheme that apparently the defendant had worked out in his own mind of how he was going to force the young women to have sex with him, intimidate them with his size, take advantage of them, their youth, both of these young ladies were youthful inexperienced, there was no question in the Courts mind that the defendant is a predator, a danger to young woman [sic] in our society who can turn violent at the drop of a hat. Very quickly turns violent to get his own way.

> I'm satisfied that the guidelines really do not adequately consider all of these factors, although I've listened close [sic] to the argument to counsel in this matter.

Defendant contends that "[t]here was no escalation of violence justifying a departure sentence particularly where [defendant] was already scored under the guidelines prior variables for subsequent offenses . . . ." While it is true that defendant's prior convictions were reflected in the scoring of the prior record variables, this Court has upheld upward departure sentences based in part on a defendant's escalating criminal behavior, even when the defendant's criminal history was contemplated in the scoring of the prior record variables. See *People v Abcumby-Blair*, 335 Mich App 210, 242-244; 966 NW2d 437 (2020). The record demonstrates that the trial court considered whether the guidelines accurately reflected the seriousness of defendant's crime, and our caselaw supports the trial court's conclusion that the guidelines did not account for defendant's escalating violent conduct. Thus, the trial court adequately justified its reasons for departing from the guidelines minimum range.

Defendant also submits that the trial court failed to consider his expressions of remorse, "demonstrated potential [for] rehabilitation while imprisoned," and mitigating factors such as his age and adverse life circumstances when imposing his sentence. However, the trial court was not required to consider those factors. A trial court may consider a defendant's expressions of remorse and potential for rehabilitation at sentencing, *Lampe*, 327 Mich App at 126, but defendant presents no authority that requires a trial court to consider those factors. Moreover, "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Barnes*, 332 Mich App 494, 507; 957 NW2d 62 (2020) (citation omitted). Considering the length of the departure, the record evidence of defendant's escalating violent behavior, and the trial court's

explanation of its rationale, defendant has not established that the trial court abused its discretion in imposing an upward departure sentence with respect to Count 3.

## III. CONCLUSION

We vacate defendant's sentence as to Count 2 and remand for resentencing on that count. In all other respects, we affirm defendant's convictions and sentences. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman