*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* JES, JR., Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

      Petitioner-Appellee,

v

JES, JR.,

      Respondent-Appellant.

UNPUBLISHED
March 11, 2026
10:53 AM

No. 372749
Livingston Circuit Court
Family Division
LC No. 2017-015453-DL

---

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

Respondent, a juvenile, appeals by right the trial court's dispositional order adjudicating him responsible for two counts of misdemeanor domestic violence, MCL 750.81(2), and placing him on probation. Respondent argues that the trial court should have dismissed all counts filed against him because of petitioner's discovery violations. We find no abuse of discretion and therefore affirm.

## I. BACKGROUND AND FACTS

This case arose from respondent's alleged assaults of BC, who was in a dating relationship with respondent from March through October 2023. Petitioner filed a petition in December 2023 alleging that respondent committed one count of assault by strangulation, MCL 750.84, and two counts of misdemeanor domestic violence, MCL 750.81(2), and requesting that the trial court take jurisdiction over respondent under MCR 712A.2. After conducting a preliminary inquiry, the trial court authorized the petition in February 2024.

Soon after, respondent filed a discovery request "demand[ing] all discoverable information and documentation pursuant to" the court rule listing mandatory discovery disclosures for delinquency proceedings, MCR 3.922. Following a pretrial hearing, the trial court set respondent's bench trial date for July 16, 2024 and entered a scheduling order mandating, among other

-1-

requirements, the production of "[a]ll discoverable materials outlined in MCR 3.922," the filing of copies of the parties' witness and exhibit lists, and the service of all exhibits on the other parties. Petitioner timely filed its witness list naming its anticipated witnesses and stating that it "may seek to admit" as exhibits "[p]hotographs" and "[i]n car audio and/or video." Petitioner also provided respondent photographs that BC had taken of her injuries and a police report.

Petitioner filed its notice of expert testimony indicating that its expert witness would "discuss the mechanisms of strangulation, symptomology of strangulation, and common injuries." Respondent then moved for sanctions, arguing that petitioner had failed to comply with the mandatory discovery rules set forth in MCR 3.922 and the trial court's scheduling order because it had not provided "any expert report or findings specific to this case" nor "any report or a written description of the substance of the proposed testimony, the expert's opinion, and underlying bases of that opinion." The trial court agreed that petitioner had violated MCR 3.922 and accordingly limited the expert's testimony to "strangulation, symptomology of strangulation, and common injuries." Respondent's bench trial proceeded as scheduled thereafter on July 16, 2024.

BC testified at trial as to the alleged assaults underlying respondent's charged counts. The first charged incident occurred around June 2023. BC testified that they were arguing when respondent "started biting [her] arm, pushing [her] on the floor, punching [her] repeatedly." BC took photographs with her phone of the bite mark and the bruising on her arm after the incident, which were admitted into evidence.

The second charged incident occurred in October 2023. BC testified that respondent became upset with her when she was helping him lift a cabinet and punched her in the back of her head and near her eye. BC explained that she observed marks and bruising on her face afterward and developed a black eye two or three days later. Photographs taken by BC of her bruised eye on the day of the incident and over the next three days were admitted into evidence.

The last charged incident occurred about four days later. BC testified that she was packing her possessions to leave respondent's home when he entered the room, locked the door, and began yelling at her. BC continued that respondent pushed her onto the bed, got on top of her, and "choked [her] with two hands on [her] neck." She stated that respondent "wouldn't get off of [her] until his dad came next to the door and started knocking, [and] told him to open the door." Afterward, BC observed that she had a "broken eye vessel" and took a photograph with her phone of her eye, which she described was "[s]till bruised" and "purple." That photograph was admitted into evidence at trial. BC left respondent's house that day and went to the police station.

Following petitioner's expert witness's testimony, Sergeant James Steinaway of the Livingston County Sheriff's Office testified that he took BC's complaint at the police station and affirmed that BC told him "the same information she shared in court today." Sgt. Steinaway testified that he had observed that BC had "a black eye with some yellow bruising and what appeared to be a broken blood vessel inside of her eye," and "some redness" on her lower neck. BC had testified earlier that an officer photographed her "eye and the mark on [her] neck," and Sgt. Steinaway corroborated this by testifying that he took photographs of BC to document her injuries. Sgt. Steinaway explained that he took BC's complaint at the end of his shift and did not realize until the day of trial that he had not uploaded these photographs to the appropriate website. He added that the police photographs were not included on the "evidence list" of the police report

he authored. The report, which was disclosed to respondent, nonetheless documented that photographs were taken. Respondent did not receive these photographs during discovery. Petitioner did not seek to admit them into evidence and clarified that it did not have them before trial.

Sgt. Steinaway additionally testified that there was a "dashcam or body mic" recording of his interaction with BC but that he had not reviewed the recording and was not aware whether it encompassed the entire interaction. Sgt. Steinaway also explained that another officer interviewed respondent, but that he did not know whether recordings of any police interactions with respondent, or respondent's father, existed, and that he had undertaken no such inquiry. Respondent was not provided any of these police recordings, and petitioner did not seek to admit them.

After petitioner rested, respondent argued that petitioner had violated the mandatory discovery rules under MCR 3.922 by not disclosing the police photographs and the police recording of Sgt. Steinaway's interaction with BC, and moved the trial court to dismiss all counts alleged in the petition or to declare a mistrial. Respondent had also noted that Sgt. Steinway did not know whether there was "any video or audio footage of the interview with" respondent. Petitioner contended that dismissal was not an appropriate remedy and proposed a short recess to allow respondent to review the undisclosed material. Respondent responded that it would be unfair to require him to review the undisclosed material during trial.

The court declined to recess the trial given that petitioner had already rested its case and agreed with respondent that the nondisclosure of the police photographs and police recording of BC's interview violated MCR 3.922 and the court's scheduling order. The trial court dismissed only the assault-by-strangulation count, however, reasoning that a dismissal of that one count, rather than of all three, would better serve the interests of justice. It noted that the nondisclosures were especially prejudicial to that count because the recording would have captured BC's account close in time to the final assault and the police photographs would have depicted BC's injuries that day.

The trial continued on the two counts of misdemeanor domestic violence, of which respondent was adjudicated responsible. The trial court entered a dispositional order placing respondent on probation. This appeal followed.

## II. STANDARD OF REVIEW

We review "a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion." *People v Dickinson*, 321 Mich App 1, 17; 909 NW2d 24 (2017). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted).

## III. ANALYSIS

Respondent argues that the trial court committed reversible error by failing to dismiss all charged counts as a sanction for petitioner's discovery violations. We disagree and conclude that the trial court did not abuse its discretion by dismissing only the assault-by-strangulation count.

"[T]rial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). This authority is additionally codified in the Michigan Court Rules. MCR 3.922(A)(4) and (B)(5) provide that the failure to provide the mandatory disclosures for delinquency proceedings enumerated therein "may result in such sanctions in keeping with those assessable under MCR 2.313." MCR 2.313 in turn permits trial courts to impose just sanctions for discovery violations and provides a nonexhaustive list of potential sanctions that includes severe penalties like "dismissing [an] action or proceeding or a part of it" or entering "an order treating as a contempt of court the failure to obey an order." MCR 2.313(B)(2)(c) and (d).

A trial court's "discovery sanctions are to be proportionate and just," *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 87; 618 NW2d 66 (2000), and in fashioning "the appropriate remedy for discovery violations, [a] trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). Our legal system "favor[s] disposition [of] litigation on the merits," *North v Dep't of Mental Health*, 427 Mich 659, 662; 397 NW2d 793 (1986), and "[s]evere sanctions are generally appropriate only when a party flagrantly and wantonly refuses to facilitate discovery, not when the failure to comply with a discovery request is accidental or involuntary." *Kalamazoo Oil Co*, 242 Mich App at 86 (citation omitted). Thus, the "harsh remedy" of dismissal should be "invoked cautiously" and "only in extreme situations." *North*, 427 Mich at 662 (quotation marks and citations omitted).

Before ordering dismissal, a trial court must "carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995). Some factors a trial court should consider before taking the "drastic step" of dismissal are:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Id.* at 506-507.]

With these principles in mind, we consider the present dispute.[1]

Focusing principally on the prejudice factor, respondent argues that petitioner's discovery violations were as prejudicial to the undismissed domestic-violence counts as they were to the

---

[1] We note that petitioner does not appear to contest on appeal the trial court's underlying determination that petitioner violated MCR 3.922 and the court's scheduling order by failing to disclose the materials at issue. So we will assume without deciding that this determination was correct. Proceeding under this assumption, we review only respondent's contention that the trial court abused its discretion by not imposing a harsher sanction for the violation.

dismissed assault-by-strangulation count.[2] We agree that the police recording and the police photographs would have been useful to respondent in preparing his defense of the two domestic-violence counts. The recording of Sgt. Steinaway's interaction with BC would have been helpful in trial preparation and could have been compared to BC's trial testimony for impeachment purposes. Further, the photographs that Sgt. Steinaway took of BC's eye and neck injuries on the day of the alleged strangulation incident would have been relevant to the domestic-violence count that arose out of the cabinet incident a few days earlier because BC's eye apparently still displayed residual bruising from respondent's punches when she went to the police. As respondent points out, the police photographs could have been compared to the photographs BC took of her injuries and possibly used for impeachment.

The available record,[3] however, does not indicate that the police photographs or the police recording would have actually been exculpatory or useful to respondent for impeachment purposes in defense of the domestic-violence counts. We see no indication that BC's statements to Sgt. Steinaway recounting the alleged assaults were materially inconsistent with her trial testimony and rather, Sgt. Steinaway testified that BC told him "the same information she shared in court." Additionally, the disclosed police report apparently contained the allegations to which BC testified and thus was presumably equally useful for impeaching BC as a recording of her statement would have been. Indeed, respondent used the police report to impeach BC's trial testimony, alluding to some minor inconsistencies between her testimony and her accounts as described in the report. Cf. *Banks*, 249 Mich App at 252-254 (holding that the trial court did not abuse its discretion in denying a defendant's motion for a mistrial when the defendant's cross-examination of a witness "would likely have taken, in part, a different tack" had he been provided the required police report, but the defendant could still explore discrepancies in the witness's testimony without the police report). Also, the nondisclosure of the police recording had less of a prejudicial impact as to the domestic-

_____

[2] In connection with this argument, respondent asserts that the trial court was operating under the misapprehension that the undisclosed materials related only to the assault-by-strangulation count. We read the record differently. Although the trial court did initially state that "all of the discovery violations . . . were related to the [assault-by-strangulation] count," the trial court later clarified by explaining that the discovery violations "include[d] some testimony of the other domestic violence incidents as part of the recording, but . . . the majority of the discovery violations were still geared towards the first count, and so I think this is a remedy that will balance . . . the concerns from . . . both parties." The trial court also stated in its written order that the "[f]ailure to provide photographs and the victim's recorded statements [wa]s *especially* prejudicial as to the [assault-by-strangulation] count." (Emphasis added.) "[I]t is a well-settled proposition that 'a court speaks through its written orders and judgments, not its oral pronouncements.' " *Tomasik v Michigan*, 327 Mich App 660, 678; 935 NW2d 369 (2019), quoting *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Given this clarification, the trial court did not find that the discovery violations related to only the assault-by-strangulation count, but rather that they were most prejudicial to that count.

[3] We have not been provided the undisclosed materials as part of this appeal.

violence counts than as to the dismissed assault-by-strangulation count because Sgt. Steinaway took BC's statements right after the strangulation incident occurred.

Similarly, the record does not suggest that the police photographs of BC's injuries had any actual impeachment value for challenging the domestic-violence counts. Again, Sgt. Steinaway testified that he observed that BC "had a black eye with some yellow bruising," and took photographs to document that injury. Sgt. Steinaway's observations were consistent with BC's testimony that her black eye was "purple" and "[s]till bruised" when she spoke with the police. Further, the trial court observed that the admitted photographs taken by BC documented her "black eye and how the bruising changed over time." Thus, unlike the value of the police photographs for the assault-by-strangulation count as the only photographic evidence of BC's neck injuries resulting from the strangulation incident, respondent has not demonstrated a significant prejudicial impact from petitioner's nondisclosure of the police photographs as to the domestic-violence counts.[4]

Other factors also do not militate in favor of a full dismissal. As respondent acknowledges, nothing suggests that petitioner willfully withheld the police recording or the police photographs from respondent. Cf. *Kalamazoo Oil Co*, 242 Mich App at 89-90 (concluding that the trial court did not abuse its discretion in entering a default judgment against a defendant given his "deliberate noncompliance with court rules and a discovery order in addition to . . . [his] attempt to mislead the court and disrupt the progression of the lawsuit"). Nor do we see any evidence of deliberate delay. Additionally, petitioner's attempt to cure the discovery violations through the proposal of a short recess to give respondent the opportunity to review the undisclosed materials weighed against a harsher sanction.

Regarding petitioner's compliance with court orders, in addition to not disclosing the police photographs and police recording, we agree that petitioner also violated the trial court's scheduling order by providing insufficient disclosures under MCR 3.922 regarding its expert witness. Although this violation was not insignificant, it appears only related to the dismissed assault-by-strangulation count and was cured by the trial court's limitation of the expert's testimony. Petitioner otherwise complied with MCR 3.922 and the trial court's scheduling order by providing other disclosures. Considering petitioner's other disclosures and the absence of evidence that petitioner willfully committed the discovery violations, petitioner's prior discovery violation did not mandate full dismissal. Cf. *Maldonado*, 476 Mich at 392-398 (finding that dismissal was warranted when the plaintiff and plaintiff's counsel repeatedly publicized inadmissible evidence despite the trial court's warning and orders forbidding this misconduct).

In sum, although the undisclosed materials could have helped respondent prepare his defense of the domestic-violence counts and petitioner previously made insufficient disclosures,

---

[4] Although the trial court did not appear to rule on this issue, respondent criticizes petitioner's failure "to provide the likely recordings that existed of the interviews with [respondent] and his father." To the extent that these recordings, if they existed, should have been disclosed under MCR 3.922 and the trial court's scheduling order, we agree that they also may have helped respondent prepare his defense. Nonetheless, as with the other undisclosed materials, there is no indication in the record as to the prejudicial impact of the nondisclosure.

other factors weighed against dismissal of all counts.  See *Vicencio*, 211 Mich App at 507.  The trial court's ruling reflects its careful consideration of the pertinent factors and available options in determining an appropriate sanction for petitioner's discovery violations.  By dismissing only the assault-by-strangulation count, the trial court appreciated the gravity of the discovery violations while still holding respondent accountable for his conduct.  This partial dismissal was a proportionate and just sanction, especially given the absence of any evidence that petitioner "flagrantly and wantonly refuse[d] to facilitate discovery."  See *Kalamazoo Oil Co*, 242 Mich App at 86-87.  For these reasons, we hold that the trial court did not abuse its discretion in dismissing only the assault-by-strangulation count.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney